Joseph CROCKER, Louis Duplantis, Roman Duronsolet, Sr., Arthur Evans, Willie Jackson, Nelson Laborde, Dean Mefferd, Colbert Ordoyne, Lester Plaisance, Louis Rodriguez

v.

BORDEN, INC., et al.

Civ. A. Nos. 94–1303 to 94–1313.

United States District Court,
E.D. Louisiana.

May 6, 1994.

Stephen Barnett Murray, Murray Law Firm, New Orleans, LA, Mitchell Harry Tyner, Wm. Roberts Wilson, Jr., P.A., New Orleans, LA, Ronald C. Morton, New Orleans, LA, for Joseph Crocker.

Michael T. Cali, Darryl J. Foster, Randall A. Fish, Lemle ·& Kelleher, New Orleans, LA, for Borden, Inc., Owens–Corning Fiberglas Corp.

James Stephen Thompson, William G. Argeros, Allen Lewis Smith, III, Porteous, Hainkel, Johnson & Sarpy, New Orleans, LA, for Fibreboard Corp.

Robert Emmett Kerrigan, Jr., Arthur Wendel Stout, III, William Claudy Harrison, Jr., Lisa Cutitto Winter, Janet L. MacDonell, Gary Barkley Roth, Deutsch, Kerrigan & Stiles, New Orleans, LA, for Flexitallic Inc., GAF Corp.

Maria I. O'Byrne Stephenson, Earl N. Vaughan, Lisa Carol Matthews, Catherine Irvin Chavarri, Law Offices of Maria I.

O'Byrne Stephenson, New Orleans, LA, Thomas W. Tyner, Aultman, Tyner, McNeese & Ruffin, Hattiesburg, MS, for Garlock Inc., Anchor Packing Co.

Richard L. Forman, Walter G. Watkins, Jr., Ronald D. Collins, John D. Cosmich, Forman, Perry, Watkins & Krutz, Jackson, MS, John Randall Santa Cruz, New Orleans, LA, for Owens Illinois, Inc., Uniroyal, Inc.

James Stephen Thompson, William G. Argeros, Allen Lewis Smith, III, Porteous, Hainkel, Johnson & Sarpy, New Orleans, LA, Henry G. Garrard, III, Rikard L. Bridges, Michael C. Daniel, Blasingame, Burch, Garrard & Bryant, P.C., Athens, GA, for Pittsburgh Corning Corp.

Maria I. O'Byrne Stephenson, Earl N. Vaughan, Lisa Carol Matthews, Catherine Irvin Chavarri, Law Offices of Maria I. O'Byrne Stephenson, New Orleans, LA, for Rock Wool Mfg. Co.

Andrew Lane Plauche, Jr., Plauche, Maselli & Landry, New Orleans, LA, for American Motorists Ins. Co.

Rebecca Ann Bush, Ashley Carter Plunkett, Adams & Reese, New Orleans, LA, for A.W. Chesterton Co.

Samuel Milton Rosamond, III, Boggs, Loehn & Rodrigue, New Orleans, LA, for Commercial Union Ins. Co.

Geoffrey Powell Snodgrass, Christovich & Kearney, New Orleans, LA, for Highlands Ins. Co.

Kaye N. Courington, Woodley, Williams, Fenet, Boundreau & Brown, New Orleans, LA, for Hopeman Bros. Inc.

Ralph Shelton Hubbard, III, Gordon Peter Wilson, Lugenbuhl, Burke, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for Travelers Ins. Co.

James C. Gulotta, Jr., Mary L. Dumestre, Dane S. Ciolino, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, LA, for Certain Underwriters of Lloyds.

Sean Francis O. Murphy, McGuire, Woods, Battle & Boothe, McLean, VA, Godfrey Bruce Parkerson, Barbara Lee Arras, Patricia A. Lynch, Phelps Dunbar, New Orleans,

LA, Michael A. Abel, Waller T. Dudley, McGuire, Woods, Battle & Boothe, Richmond, VA, for Westinghouse Elec. Corp.

## ORDER AND REASONS

LIVAUDAIS, District Judge.

These ten civil actions were removed from state court by Westinghouse Electric Corporation ("Westinghouse"), a third-party defendant to a third-party claim by defendant/third-party plaintiff Owens–Corning Fiberglas ("OCF"), pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute. Plaintiffs filed a motion to remand all actions and sought expedited hearing on the motion inasmuch as these actions are scheduled for trial in the state court on June 13, 1994, approximately one month hence. The Court granted expedited review, heard oral argument, and allowed all interested parties to file supplemental memoranda. Parties objecting to the remand included third-party defendant Westinghouse, defendant/third-party plaintiff OCF, defendant Flexitallic, and third-party defendants GAF Corporation and Dana Corporation.

The plaintiffs, Joseph Crocker, Louis Duplantis, Roman Duronset, Sr., Arthur Evans, Willie Jackson, Nelson Laborde, Dean Mefferd, Colbert Ordoyne, Lester Plaisance, and Louis Rodriguez, were all workers who asserted state law damage claims against several defendants arising out of their exposure to asbestos-containing products at Avondale Shipyards. This group of ten plaintiffs are part of a larger group of approximately 3,000 asbestos plaintiffs with claims pending in state court against the same group of defendants. While initially 28 defendants were named, plaintiffs filed a superceding complaint focusing on the five defendants whose products they contend were the major sources of asbestos exposure to the workers. Plaintiff's counsel stated in oral argument, without apparent contradiction, that OCF products constitute about 70% of the asbestos to which plaintiffs were exposed. The asbestos plaintiffs are arranged in "flights" for trial and this group of ten plaintiffs constitutes "Flight 2". Flight 1 consisted of seven plaintiffs whose cases have already been tried in state court. Prior to trial of the first seven cases, however, the trial court severed the third party claims, which not yet been tried. These cases were filed near the end of 1991 and thus have been pending for approximately two years. There was no federal subject matter jurisdiction over the main demand at the time the suit was filed and throughout the first year of its pendency, and thus, under 28 U.S.C. § 1446(b), the main demand was not removable.

Plaintiffs did not initially sue Westinghouse as a direct defendant. OCF filed a third-party demand against Westinghouse as to the Flight 2 cases on January 31, 1994. Plaintiffs adopted the allegations of OCF's third-party petition, but expressly disavowed any claims against Westinghouse based on exposure to asbestos contained in marine turbines. On April 20, 1994, OCF sent a letter to Westinghouse, advising that exposure to marine turbines would be pursued in the third-party action for contribution. Based upon that letter, Westinghouse timely removed these ten actions to this court pursuant to 28 U.S.C. § 1446(b).

Plaintiffs thereafter filed a timely motion to remand on the grounds that:

(1) Westinghouse is not entitled to invoke the removal statute cited in the Notice of Removal, 28 U.S.C. Sect. 1442(a)(1), since (a) Westinghouse is not an "officer of the United States or any agency thereof" within the meaning of the statute, (b) Westinghouse is not entitled to the benefit of the federal contractor defense on which it relies as a basis for federal jurisdiction, (2) there is no federal jurisdiction over the main demand, (3) there is no pendent party jurisdiction over the main demand under the circumstances of this case, and, (4) even if applicable, it is within the court's discretion to remand the main demand, and failure to do so would constitute an abuse of discretion under the circumstances of this case.

Plaintiffs' Motion to Remand, p. 1. The Court shall discuss each basis for remand *seriatim.*

■ Westinghouse premises the removal of this entire action, both main demand and third-party claim, on the federal officer re-

moval statute. That statute, 28 U.S.C. § 1442(a)(1) provides, in pertinent part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, *or person acting under him,* for any act under color of such office.

. . . . .

(emphasis added) 28 U.S.C.A. § 1442 (West 1994). In order to qualify as a federal officer, or "person" acting under him, the removing party must "(1) demonstrate that it acted under the direction of a federal officer, (2) raise a federal defense to the plaintiffs' claims and (3) demonstrate a causal nexus between plaintiffs' claims and acts it performed under color of federal office." *Mesa v. California,* 489 U.S. 121, 131–132, 109 S.Ct. 959, 966, 103 L.Ed.2d 99 (1989); *Pack v. AC and S, Inc.,* 838 F.Supp. 1099, 1101 (D.Md.1993).

■ The preliminary issue to be resolved is whether Westinghouse qualifies as a "person" acting under a federal officer who is entitled to invoke the removal provisions of 28 U.S.C. § 1442(a)(1). Plaintiff argues that under *International Primate Protection League v. Administrators of Tulane Educational Fund,* 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991), a corporation is not a "person" within the meaning of the statute. To be certain, *International Primate Protection League* did hold that an *agency* is not a "person" under § 1442(a)(1). 500 U.S. at 83–84, 111 S.Ct. at 1707–1708. Notwithstanding, the question is whether Westinghouse, a private corporation, not an agency, is a "person" for purposes of § 1442(a)(1). The reasoning of the district courts in *Pack v. AC and S, Inc.,* 838 F.Supp. 1099, 1102–1103 (D.Md. 1993) and *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 946 (E.D.N.Y.1992), persuades this Court that a purely legal "person", such as a corporation, "could be engaged in activities that amount to the implementation of a federal policy under the direction of a government officer", that § 1442(a)(1) was enact-

ed to protect. Thus, Westinghouse qualifies as a "person" who may be entitled to remove as a federal officer if it meets the three requirements set forth in *Mesa.*

To satisfy the showing required in *Mesa,* Westinghouse had submitted the affidavit of James M. Gate, Manager of Design Verification of the Marine Division of Westinghouse Electric Corporation, and a marine engineer for Westinghouse since 1953. Exhibit C to Memorandum of Westinghouse in Opposition to Motion to Remand, dated April 19, 1994. Mr. Gates states that Westinghouse manufactured and supplied main propulsion turbines and other equipment for 30 United States Naval vessels built at Avondale Shipyards during the 1960s and 1970s. He further states that:

During all aspects of Westinghouse naval turbine work (i.e., design, construction, testing, and sea trials) Westinghouse performed its work under close, constant, and detailed control and supervision by the Department of the Navy. This supervision and control was exercised by contract documents, design and construction drawings, written specifications, and personal oversight of Westinghouse work by naval officers and by civilian employees of the United States Navy. Virtually no aspect of the development, manufacture, and testing of naval turbines escaped this close control.

Gates affidavit, ¶ 6. Mr. Gates noted that after extensive testing, assembly, disassembly, and re-assembly at sites such as Westinghouse's Lester, PA facility:

The first production unit was then shipped to the shipyard with construction responsibilities for the first vessel. The turbine was typically installed by shipyard personnel acting under supervision of engineers from the Supervisor of Shipbuilding (Sup-Ships). Typically, the involvement of the turbine vendor at this stage of the process (e.g., from delivery of the turbine to completion of the sea trials) was the presence on-site of a Westinghouse engineer acting only in a liaison and troubleshooting capacity.

Gates affidavit, ¶¶ 11–17, 18.

As previously noted, plaintiffs' claims for personal injury arise out of exposure to as-

bestos containing products at Avondale Shipyards. While plaintiffs and third-party plaintiffs have made claims against Westinghouse for other asbestos containing products, such as Micarta, which is a laminated asbestos containing quarters material, and other electrical products which contained asbestos, such as motors, switches, insulated panels, and the like, which are unrelated to marine turbines, the only products which are related to the federal officer removal statute are the marine turbines. Plaintiffs have specifically disavowed any claims against Westinghouse for asbestos exposure arising out of marine turbines. OCF's third-party claim for contribution is based upon the theory that the plaintiffs' exposure to marine turbines was a contributing cause of their damages. However, it is not entirely clear from the Gates' affidavit whether in fact any of these shipyard workers were actually exposed to asbestos used in the manufacture of the turbines.

Mr. Gates states that the marine turbines were actually manufactured, tested, assembled and dis-assembled, and re-assembled at Westinghouse facilities, not at Avondale. The turbines apparently were shipped after constructed for installation in the vessels. The steam turbines may have been essentially completed units ready for installation and the asbestos used in their manufacture was used for insulation in the interior of the turbines. As noted by OCF in its Supplemental Memorandum in Opposition to Plaintiffs' Motion to Remand:

> [I]t is unlikely that Westinghouse steam turbines will be shown to be involved in the claims of all 2,500 plaintiffs. Initially, at this early point in discovery, the destroyer escorts previously mentioned, while very large projects, are confined to the Avondale main yard. Many of Mr. Murray's 2,500 plaintiffs worked primarily at other locations, in particular at the Harvey quick repair yard.

> Secondly, there are only certain trades which would have probably come into contact with Westinghouse products, namely electricians, boilermakers, insulators, pipefitters, and others who would have had some direct contact with the construction and installation of the steam turbines.

> Again, Mr. Murray's 2,500 plaintiffs represent dozens of job descriptions.

OCF Memorandum in Opposition to Plaintiffs' Motion to Remand, p. 8. In the record as it stands before the Court at this time, it appears that any exposure to asbestos in the Westinghouse steam turbines would be extremely minimal in the context of the entire exposure of all of the 3,000 plaintiffs in this group of actions. Indeed, it is apparently unknown, or at least has not been brought to the attention of this Court, whether any of the plaintiffs in Flight 2 ever worked anywhere near the Westinghouse marine turbines in question. Certainly, however, the *mere possibility* that they were exposed to asbestos containing products within the marine turbines has not been eliminated. It is significant that the Louisiana Supreme Court in *Cole v. Celotex Corporation*, 599 So.2d 1058 (La.1992) held that in cases involving workers alleging damages for long-term exposure to asbestos, both plaintiffs' direct claims and contribution rights among the defendants shall be governed by the pre–1980 law of apportionment of liability among joint tortfeasors, i.e., liability is apportioned by virile shares, or by heads. *Id.* at 1068 and 1072.

██ To determine if Westinghouse qualifies as a federal officer, the first question to be addressed under *Mesa v. California*, 489 U.S. at 125, 109 S.Ct. at 962–963, is whether Westinghouse has demonstrated that it acted under the direction of a federal officer. The submission of the Gates affidavit, which is unrebutted, shows clearly that Westinghouse was acting under the direction of the Navy in the construction of the marine turbines.

██ The second question to be addressed is whether Westinghouse raises a federal defense to the third-party plaintiffs' claims. Under *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), any party qualifying as a federal officer who can raise a colorable defense arising out of their duty to enforce federal law is entitled to remove. The party need not prove that it can sustain the defense, but only that it presents a colorable claim. 395 U.S. at 406, 89 S.Ct. at 1816. The *Willingham* court explained that "one of the most

important reasons for removal is to have the validity of the defense of official immunity tried in a federal court," but that the removing party need not prove his case prior to removal, nor should the policy of protecting federal officers be "frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.*

Westinghouse claims the military contractor defense espoused in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). The *Boyle* court held that "[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. at 512, 108 S.Ct. at 2518. Plaintiffs argue that while Westinghouse may be able to establish the first two components of the defense, it simply cannot establish the third. While this may be true, *Willingham* dictates that so long as the removing party can establish a *colorable* claim to a federal defense, it meets the requirements established in *Mesa.* The Court finds that Westinghouse has established a colorable claim to the military contractor defense to OCF's third-party demand against it relating to the manufacture of marine turbines for naval vessels.

■ The third *Mesa* requirement is that Westinghouse must demonstrate a causal nexus between the claims against it and the acts it performed under color of federal office. The claims against it arise out of the construction of marine turbines utilizing asbestos containing materials and these turbines were constructed pursuant to Naval specifications for the U.S. Navy. The causal nexus is established.

■ The Court having concluded that Westinghouse was entitled to invoke the provisions of 28 U.S.C. § 1442(a)(1), the next inquiry is whether the lack of federal jurisdiction over the main demand precludes Westinghouse from removing it along with the third party demand. Plaintiffs concede that the fact that the claim out of which arises the federal contractor defense is a

third-party action, not the main demand, does not *prevent* the removal of the entire action, along with the third-party action. *IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc.,* 676 F.2d 152, 156 (5th Cir.1982); *Nolan v. Boeing Co.,* 919 F.2d 1058, 1066 (5th Cir.1990).

■ The critical question then becomes whether the Court has supplemental jurisdiction over the main demand, and if so, does the Court have the discretion to decline jurisdiction over the main demand, sever it from the third-party claims, and remand it to state court. Even further, if that discretion does exist, the Court must consider whether that discretion should be so exercised. This discussion must therefore begin with an examination of the supplemental jurisdiction statute, 28 U.S.C. § 1367, which has overruled the pendent party jurisdiction doctrine of *Finley v. United States,* 490 U.S. 545, 547, 109 S.Ct. 2003, 2005, 104 L.Ed.2d 593 (1989). *See, Rodriguez v. Pacificare of Texas, Inc.,* 980 F.2d 1014, 1018 (5th Cir.1993). This statute, which was enacted in 1990, is applicable to this action as it was commenced after December 1, 1990. *See, Rodriguez,* 980 F.2d at 1018, and *Whalen v. Carter,* 954 F.2d 1087, 1097 n. 10 (5th Cir.1992).

The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides in relevant part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve joinder or intervention of additional parties.

\* \* \* \* \* \*

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367 (West 1994).

■ The *Practice Commentary*, by David D. Siegel, which follows the statute in the United States Code Annotated, illuminates the legislative intent and judicial underpinnings of the statute. Supplemental jurisdiction codifies the caselaw doctrines of "pendent" and "ancillary" jurisdiction. The Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), recognized the doctrine of pendent jurisdiction, wherein the federal court is *permitted* to entertain both federal claims and state claims of the plaintiff in the federal forum. *Practice Commentary*, 28 U.S.C. § 1367, p. 829 (West 1994).

■ "Pendent party" jurisdiction, which addressed the situation where a plaintiff asserted *federal* claims against one party and purely state claims against a different party, was rejected in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), and again rejected in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), even where the federal claim was within the exclusive jurisdiction of the federal courts, such that there was no single forum where the plaintiff could bring both claims. Both *Aldinger* and *Finley* were legislatively overruled by the last sentence of subdivision (a) of § 1367, which states that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Practice Commentary*, pp. 831–832.

§ 1367(c) grants the district court the discretion to decline supplemental jurisdiction if it determines that one of four enumerated circumstances are present. Relevant to the case *sub judice* are subsections (c)(2) and (c)(4). Subsection (c)(2) provides that jurisdiction may be declined if the state claims substantially predominate over the federal claims. Subsection (c)(4) allow the Court to determine whether in exceptional circumstances, there are other compelling reasons for declining jurisdiction. It is apparent that, while allowing federal courts to take supplemental jurisdiction over state law claims, Congress intended for federal courts to have the discretion to decline such jurisdiction when circumstances so warrant. Siegel in the *Practice Commentary*, noted, in relation to subsection (c)(3):

> Whether a dismissal of the touchstone claim should bring about a dismissal (or remand, in a removal situation) of the dependent claim for want of supplemental jurisdiction should hinge on the moment within the litigation when the dismissal of the touchstone claim takes place, and the other surrounding circumstances. If, for example, the main claim is dismissed early in the action, before any substantial preparation has gone into the dependent claims, dismissing or remanding that latter upon declining supplemental jurisdiction seems fair enough. But if the dismissal of the main claim occurs late in the action, after there has indeed been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary. The discretion implicit in the word "may" in subdivision (c) of § 1367 permits the district court to weigh and balance all of these factors. The House Report of the Committee on the Judiciary (Report 101–734, p. 29) said of subdivision (c) that it requires the district court, in exercising discretion, to undertake, as it did under prior law, 'a case-specific analysis'. So for clause (3).

> Finally, clause (4). The Report also said that clause (4) was being included just to be sure that the court can decline supplemental jurisdiction in other 'exceptional circumstances' that present 'compelling reasons'. While appearing to constitute a separate category for declining supplemental jurisdiction, distinct from the first

three, the language of clause (4) would also appear to indicate that all declinations of supplemental jurisdiction should be reserved for situations in which there are 'compelling reasons'. *Practice Commentary,* § 1367, pp. 835–836. The following decisions exemplify situations where federal district courts exercised this discretion to so decline.

The Sixth Circuit in *Landefeld v. Marion General Hospital, Inc.,* 994 F.2d 1178 (6th Cir.1993) upheld the decision of the district court to decline jurisdiction over state law breach of contract and tort claims joined with an action under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* arising out of the suspension of an internist's medical staff privileges by a hospital. With little discussion, the appellate court found that the district judge's decision to refuse to exercise pendent jurisdiction over those state law claims, because there were no overwhelming issues of judicial economy, but novel state law questions were present, was not an abuse of discretion. 994 F.2d at 1182.

A district court declined to exercise supplemental jurisdiction over three sets of employment related state law claims, which were joined with an Age Discrimination in Employment Act Claim (ADEA), 29 U.S.C. § 621, *et seq.,* in *James v. Sun Glass Hut of California, Inc.,* 799 F.Supp. 1083 (D.Colo. 1992). Finding that the plaintiff's state law contract and fraud claims require elements of proof that are "distinct and foreign" to her ADEA claim, the district court held that the three sets of state law claims clearly predominate over the lone federal claim and declined to exercise supplementary jurisdiction over them, apparently severing them and dismissing them, with the ADEA claim to be tried in the federal court. 799 F.Supp. at 1084–1085.

The district court in *Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Securities, Inc.,* 823 F.Supp. 1191 (E.D.Pa.1993), declined to exercise supplemental jurisdiction over state law crossclaims by the Trustees (the former and present trustees and administrators of the Glaziers and Glassworkers Union Local 252's Annuity, Vacation, Pension and Health and Welfare Funds) against the defendants (the brokerage firm and the brokers) that were appended to ERISA claims by the Annuity, Vacation, Pension, and Health and Welfare Funds. The district judge concluded that because the decision to dismiss the state law claims occurred at a relatively early stage in the litigation, the Trustees would not be prejudiced by the dismissal as the claims could be pursued in state court. It further found that "considerations of judicial·economy and ease of disposition of the issues dictate that the federal forum does not provide the most efficient means for the Trustees to pursue their claims for contribution and indemnification." 823 F.Supp. at 1197.

The Third Circuit in *Growth Horizons, Inc. v. Delaware County, Pa.,* 983 F.2d 1277 (3rd Cir.1993) remanded the state claim to the trial court for a determination whether it should decide the contract claim because all of necessary evidence to decide was before the court. The appellate court noted that in reaching a decision whether supplemental jurisdiction should be declined, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Id.* at 1284; *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

■ Thus, the Court having determined that it does have supplemental jurisdiction over the main demands in these asbestos actions, must decide the difficult question whether it should decline to exercise that jurisdiction. In reaching this decision pursuant to 28 U.S.C. § 1367, the Court shall bear in mind the considerations of judicial economy, convenience, and fairness to the litigants embraced in *United Mine Workers* and so often repeated. Important to this inquiry is the fact that there are approximately 3,000 plaintiffs whose suits are pending in the state court, their chosen forum. Their claims against the defendants are exclusively derived from state law. The 10 plaintiffs in Flight 2 whose cases were removed have trial dates pending in state court in about one month. Their cases have been pending for almost three years.

If these cases are not remanded, they must be transferred to the United States District Court for the Eastern District of Pennsylvania, where literally many thousands of asbestos cases filed in federal court are presently pending in MDL–875. If history is any indicator, these cases most assuredly will not be tried for several years, perhaps not until the turn of the century.[1] There is no reason to believe that, in terms of expediency and efficiency, these cases ought to be in federal court where they would be tried with all due haste. Unfortunately, quite the opposite appears to be the truth.

None of these plaintiffs have asserted claims against Westinghouse arising out of marine turbines, the linchpin of the federal claim. In *Pack v. AC and S, Inc.*, 838 F.Supp. at 1099, a case urged by Westinghouse as the authority to retain supplemental jurisdiction, the plaintiffs were Westinghouse employees working at the Baltimore Shipyard engaged in the supply, manufacture, and design of turbine generators pursuant to the direction and control of the United States Navy and the United States Maritime Commission and Westinghouse was sued as a direct defendant for exposures to the asbestos associated with the marine turbines. 838 F.Supp. at 1101–1102. This was a critical fact relied upon by the district judge in *Pack*, as he specifically pointed out in his memorandum opinion denying reconsideration of his refusal to remand that:

> [D]espite several invitations by Westinghouse to voluntarily dismiss claims arising from alleged injuries sustained from marine turbines, plaintiffs refused. Plaintiffs cannot have it both ways: it is unreasonable to claim that the action should be remanded to state court because none of

the plaintiffs' injuries resulted from exposure to Westinghouse marine turbines and to refuse to voluntarily dismiss such claims.

*Pack v. AC and S, Inc.*, Civil Action 93–3011 (Young, SJ.) (D.Md. Mar. 8, 1994). In fact, very few of these 3,000 plaintiffs, and perhaps none of the 10 plaintiffs in Flight 2, may have been exposed to asbestos contained in the Westinghouse marine turbines. The plaintiffs make no claim for such exposures.

Upon due consideration of the policies of judicial economy, convenience, and fairness to the parties, as outlined herein, the Court finds that the main demand ought to be severed from OCF's third-party claims against Westinghouse for exposures to asbestos contained in marine turbines constructed for the Navy and that the Court should decline supplemental jurisdiction over the main demands and the third-party claims unrelated to the Westinghouse marine turbines and remand them to state court. Clearly state claims substantially predominate over the lone federal claim. 28 U.S.C. § 1367(c)(2). Further, the compelling reasons outlined above convince this Court that as a matter of fairness to the litigants, the main demands ought to be remanded for trial. 28 U.S.C. § 1367(c)(4).[2]

Westinghouse urges the Court that severance, and remand, of these claims would be unfair and inconvenient to the parties and would not be judicially economical. The Court has quickly studied the many authorities and found not one which held that the lone federal claim cannot be severed from the many state law claims. Further, the Court finds it interesting that on February 22, 1994, Westinghouse filed a motion in state court seeking severance and separate trial of

---

1. This is not to criticize Judge Weiner, on whose shoulders the plight of these several thousand federal asbestos plaintiffs fell. His is a nearly impossible task. This court is no novice to asbestos cases, as hundreds of Jones Act asbestos cases were once pending, and disposed of, in this section, prior to the order mandating that they be transferred by the Multi–District Litigation Panel, entered July 29, 1991, almost three years ago. To date, none of these cases have been transferred back to this court, for trial. *Hannon v. Waterman Steamship Lines*, Civil Action 80–1175, Section E, Eastern District of Louisiana.

2. While this would not prevent removal on the basis of the federal officer removal statute so long as a colorable claim of a federal defense is presented, it is relevant to note that the military contractor defense has been routinely rejected in almost every post-*Boyle* asbestos case. This is so because unless the government is warned about the dangers in the use of defective equipment and the contractor knows of the dangers, the military contractor defense does not apply. *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242 (5th Cir.1990).

the third-party demand in Flight 2 cases. Copies of these pleadings appear within Rec. Doc. 1 in this federal court action. Westinghouse states that severance and separate trial of the third party demand is warranted for these reasons, among others:

1. None of the approximately 3,000 plaintiffs in the captioned matter has sued Westinghouse as a primary defendant.

2. OCF filed its Third–Party Demand against Westinghouse on January 31, 1994, over two years after plaintiffs first filed suit in this Court.

3. The claims of the Second Flight of 11 plaintiffs are scheduled to being trial on June 13, 1994. OCF has known since December 16, 1993 that these claims would be part of Flight 2. Notwithstanding this knowledge, OCF waited for six weeks to file its Third–Party Demand against Westinghouse and 21 other third-party defendants until the very last day possible under this court's Order.

4. Discovery has been ongoing in this litigation for over two months; to date, all 10 living plaintiffs in Flight 2 have been deposed. Voluminous document production has also occurred including production of extensive medical records for all 11 plaintiffs.

5. Since Westinghouse has not participated in the discovery conducted to date in this case, all depositions must be retaken. Further, plaintiffs' counsel and counsel for the other primary defendants would bear the burden and cost of having to attend the second deposition sessions of the plaintiffs.

6. Westinghouse has never been a member of the 'asbestos industry.' Westinghouse is a 'non-traditional defendant' in these cases. For purposes of this litigation, it is engaged primarily in the manufacture, sale and service of various electrical equipment and apparatus. Even the most capable juror may not be able to keep evidence relevant to Westinghouse separate from the extensive evidence that will be considered as to the 'traditional' companies in this litigation, which are primary defendants. Jury confusion is also likely to flow from consideration of the claims and testimony of and for 11 plaintiffs, 8 defendants and 22 third-party defendants.

7. OCF **will not be prejudiced** by the severance of Westinghouse and other third-party defendants as it would retain the right to pursue its third-party claim, if any such claim still existed after the June 13 trial.

(emphasis added).

For all these reasons so ably described by Westinghouse, the Court shall sever that the main demand and the third-party claims not related to the Westinghouse marine turbines, retain jurisdiction over the OCF–Westinghouse turbine claim and stay the federal action, and remand the remaining claims from state court from which they were removed. OCF will be afforded the opportunity to present its third-party demands against all other third-party defendants, and its rights to claim contribution against Westinghouse for marine turbine asbestos exposure shall be preserved. The plaintiffs shall have a speedy and efficient determination of their claims. The third-party Westinghouse marine turbine claims shall be stayed so that Westinghouse need not defend two suits simultaneously. Many of the claims against Westinghouse arising out of marine turbines may become moot, as many of the plaintiffs may have never been exposed to the turbines in the course of their work, either by reason of occupation or worksite, and further, if the plaintiffs lose in the state court trial against the defendants in the main demand, the third-party demand shall naturally fall. Further, the removal right of Westinghouse as a person acting under a federal officer, to present its claim to a federal court so that federal interests shall be protected is being honored.

Accordingly, for the above and foregoing reasons,

IT IS ORDERED that the main demands of the plaintiffs against all named defendants and the third-party demands of all third-party plaintiffs against all defendants, *except for all third-party claims by Owens–Corning Fiberglas against Westinghouse Electric Corporation arising out of marine turbines which it constructed for the Navy,* be and are hereby **SERVED** from the OCF

third-party claims against Westinghouse arising out of exposure to asbestos contained or associated with marine turbines;

**IT IS FURTHER ORDERED** that the main demands of the plaintiffs against all named defendants and the third-party demands of all third-party plaintiffs against all defendants, *except for all third-party claims by Owens–Corning Fiberglas against Westinghouse Electric Corporation arising out of exposure to asbestos contained in marine turbines which it constructed for the Navy* be and are hereby **REMANDED** to Civil District Court for the Parish of Orleans, State of Louisiana;

**IT IS FURTHER ORDERED** that the OCF third-party claims against Westinghouse Electric Corporation arising out of exposure to asbestos contained in marine turbines constructed for the Navy be and are hereby **STAYED.** This action is hereby marked **CLOSED** for statistical purposes, to be reopened upon motion and order within 30 days of an event which would render reopening of this action appropriate.