**Charles GOOD and Carolyn Good, Plaintiffs,**

v.

**ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants.**

Civil Action No. 95–6102.

United States District Court, E.D. Pennsylvania.

Jan. 18, 1996.

Laurence H. Brown, Steven J. Cooperstein, Brookman, Rosenberg, Brown & Sandler, Philadelphia, PA, for plaintiffs.

John P. McShea, Eckert Seamans Cherin & Mellott, Philadelphia, PA, for Westinghouse Electric Corporation.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiffs Charles Good and Carolyn Good ("Plaintiffs") filed a personal injury action on July 7, 1993 in the Court of Common Pleas of Philadelphia County seeking damages for injuries caused to Charles Good, which resulted from exposure to asbestos. Westinghouse Electric Corporation ("Westinghouse"), one of the named defendants, filed a notice of removal in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1442(a)(1) on September 27, 1995.

Pending before this Court is the motion of plaintiffs to remand the case to state court (Document No. 4). Upon consideration of the motion of plaintiffs and the response of Westinghouse thereto, and for the following reasons, the motion of plaintiffs will be granted.

### I. FACTUAL BACKGROUND

Charles Good ("Good") worked as a boilermaker and boiler tender for the United States Navy for more than 20 years. During his Navy service, Good worked on several vessels containing turbine generators manufactured by Westinghouse, which allegedly emitted asbestos and caused his personal injuries. Westinghouse contends that it designed and manufactured the turbine generators in accordance with specifications and regulations mandated by the Navy and is thereby entitled to remove the case to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Plaintiffs have filed a motion for remand, arguing

that (1) Westinghouse filed untimely the notice of removal and (2) Westinghouse does not meet the statutory requirements for removal.

## II. DISCUSSION

■ Pursuant to the federal officer removal statute, an action may be removed by "any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office." 28 U.S.C. § 1442(a)(1). The federal officer removal statute allows executive branch officials and persons acting under them to remove to a federal court civil and criminal actions brought against them in a state court for their official acts. A defendant bears the burden of establishing federal jurisdiction over a suit initiated in state court. *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 939 (E.D.N.Y.1992). To satisfy the statute, Westinghouse must (1) show that it acted under the direction of a federal officer, thereby demonstrating a causal nexus between plaintiffs' claims and the acts Westinghouse performed under color of federal office and (2) raise a federal defense to plaintiffs' claims. *See Mesa v. California,* 489 U.S. 121, 124–25, 129–31, 134–35, 109 S.Ct. 959, 962–63, 967–68, 103 L.Ed.2d 99 (1989).

### A. *Timeliness*

The terms of the federal officer removal statute require defendants to seek removal within 30 days after receipt of the initial pleading. If the initial pleading fails to articulate the details of the claims made, then the thirty-day time period begins on the date the defendant receives "other paper" specifically indicating the nature of the claims and the potential for removal. 28 U.S.C. § 1446(b). Plaintiffs served Westinghouse with a copy of the complaint on July 7, 1993. Neither party contends that the complaint provided sufficient notice for defendant to remove. The timeliness dispute focuses on the plaintiffs' answers to defendants' interrogatories ("Answers"), which Westinghouse received on March 2, 1995. Although the Answers did not specifically identify a Westinghouse product, they listed several navy vessels on which Good's alleged exposure to asbestos had oc-

curred. Plaintiffs contend that upon receipt of the Answers, Westinghouse had notice of its ability to remove because it knew that it had designed and manufactured the turbine generators for those particular ships named by plaintiffs in the Answers. On the other hand, Westinghouse asserts that it did not have appropriate notice of a basis for removal until September 5, 1995, when it received the affidavit signed by Good, which specifically stated that he had been exposed to asbestos in generators manufactured by Westinghouse.

I suspect that as soon as plaintiffs named in the Answers the specific navy vessels on which the alleged asbestos-producing turbine generators were located, Westinghouse had notice that its liability for asbestos injuries could result from its involvement with the design and manufacture of the turbines on the named ships. However, the record before the Court does not support my suspicions. Therefore, I will accept the contention of Westinghouse that it filed its notice in a timely manner and proceed to the merits of this motion.

### B. *Definition of Person*

■ Section 1442(a)(1) provides:

A civil or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

Plaintiffs argue that Westinghouse is not a "person" within the meaning of 28 U.S.C. § 1442(a)(1). However, plaintiffs acknowledge that "in determining the meaning of any Act of Congress, unless the context indicates otherwise ... the words 'person' and 'whoever' include corporations, companies, associations." 1 U.S.C. § 1. Although fed-

eral district courts are divided on the question, I agree with those opinions taking a broad approach when defining "person," and thereby include corporations within the definition. *See Crocker v. Borden, Inc.,* 852 F.Supp. 1322, 1325 (E.D.La.1994); *Pack v. AC and S, Inc.,* 838 F.Supp. 1099, 1102 (D.Md.1993); *Fung v. Abex Corp.,* 816 F.Supp. 569, 572 (N.D.Cal.1992); *Ryan,* 781 F.Supp. at 946–47. Therefore, I find that Westinghouse qualifies as a person within the meaning of the statute.

### C. *Acting Under an Officer*

■ Having concluded that corporations qualify as persons within the meaning of § 1442(a)(1), I must now examine whether Westinghouse acted under a federal officer. The "acting under" language in the statute forces Westinghouse to show a causal nexus between the plaintiffs' claims and the conduct taken pursuant to direction from a federal officer. *Willingham v. Morgan,* 395 U.S. 402, 408–09, 89 S.Ct. 1813, 1816–17, 23 L.Ed.2d 396 (1969); *Maryland v. Soper,* 270 U.S. 9, 33, 46 S.Ct. 185, 190, 70 L.Ed. 449 (1926); *Ryan,* 781 F.Supp. at 939.

The statute grants removal authority to "any person acting under him," employing the word "him" to refer to an officer of the United States. *International Primate Protection League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, 80, 111 S.Ct. 1700, 1706, 114 L.Ed.2d 134 (1991). Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations. *Pack,* 838 F.Supp. at 1103; *Ryan,* 781 F.Supp. at 947. By contrast, if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal. *Fung,* 816 F.Supp. at 569; *Ryan,* 781 F. Supp. at 947. Thus, Westinghouse must prove that it constructed the turbines according to the direct and detailed control of an officer of the United States, rather than at the general direction of an agency or other governmental department. *See Pack,* 838 F.Supp. at 1103.

■ Westinghouse asserts that it was acting under the direction and control of the Secretary of the Navy when it designed and manufactured the turbines, which allegedly exposed Good to asbestos. However, the language in the notice of removal of Westinghouse ("notice") and the affidavit of James M. Gate ("affidavit"), the former Manager of Design Verification of the Marine Division of Westinghouse ("Gate"), does not support Westinghouse's contention. In paragraph 12 of the notice, Westinghouse asserts that it acted under the Secretary of the Navy. However, in paragraphs 10, 11, and 19 of the notice Westinghouse abandons its assertion by referring to the general control and direction of the Navy and the federal government. Notice at ¶ 10 ("*i.e.,* the United States Navy"); notice at ¶ 11 ("under the authority and control of the United States"); notice at ¶ 19 ("controlled by the federal government").

James M. Gate, who worked for Westinghouse for almost 40 years and, except for the period of 1971–1976, had assignments involved with United States Navy and Merchant Marine vessels, provided an affidavit upon which Westinghouse relies to support its argument favoring removal. Throughout the affidavit, Gate refers to the control and direction given by the United States Navy, not the Secretary of the Navy. In paragraph 4, Gate characterizes his own affidavit as addressing "the level of direction and detail of the *United States Navy* control over the design and manufacture of engineering equipment intended for installation on navy vessels." Affidavit at ¶ 4 (emphasis added). Based upon both personal participation in the design and manufacture of Westinghouse turbines and a review of the records regarding the equipment manufactured and supplied by Westinghouse for the vessels at issue in the instant case, Gate verifies that Westinghouse manufactured and supplied the equipment pursuant to strict direction and control of the United States Navy/Department of Navy. Affidavit at ¶¶ 5, 6 & 7. Again naming an entity of the government instead of the Secretary of the Navy or any other officer, Gate states in paragraph 11 that the Naval Sea Systems Command (formerly the Bureau of Ships) developed the

initial conceptual design for the class of naval vessels and specified at least the weight, size, power output, and speed of the turbines. Affidavit at ¶ 11. Gate specifies the manner in which the Navy exercised supervision and control: contract documents, design and construction drawings, written specifications, and personal oversight of Westinghouse's work by *Naval officers and by civilian employees of the U.S. Navy.* Affidavit at ¶ 7 (emphasis added). The only officer named by Gate is the Inspector of Naval Machinery ("INM") from the Defense Contract Management Office who, along with Navy civilian employees, worked on site at the turbine manufacturing facility. According to Gate, the INM and the Navy civilians provided oversight for virtually every aspect of the manufacture and testing of the turbines. Affidavit at ¶ 20. This factual recitation by Gate evidencing the conglomerate of people employed by the United States Navy who had oversight authority does not support the blanket assertion by Westinghouse that the Secretary of the Navy provided direct and detailed control over Westinghouse. The suggestion in the notice of removal that the Secretary of the Navy was connected to the design and manufacture of turbines by Westinghouse is not supported by the record and indeed is refuted by the record. At most, the Secretary appears to have been the official outer point of multiple layers of individuals employed by the federal government who worked with Westinghouse during the design and manufacture of the turbines. Although it is true that the United States Navy and many individuals employed by the Navy worked with Westinghouse, Westinghouse does not show that the Secretary of the Navy or any other federal officer directly controlled and supervised the work of Westinghouse. *Cf. Noble v. Employers Ins.*, 555 F.2d 1257 (5th Cir.1977) (finding the "acting under" requirement satisfied where the defendant-surgeon had acted under the immediate supervision of the Administrator of Veteran Affairs, who evaluated the defendant-surgeon's performance and determined his hours and working conditions). In fact, Westinghouse itself characterizes the Gate affidavit as supporting "the claim that whatever Westinghouse did with regard to these turbine generators was controlled by the *federal government.*" Notice at ¶ 19 (emphasis added).

The facts relied on by Westinghouse as set forth in the notice and affidavit apply to the foundations of the government contract defense, rather than the officer removal statute. By showing that the United States Navy was involved in the design and the manufacture of the turbines, the detailed affidavit of Gate lends support for a colorable claim of the government contract defense, but I find that these facts do not show that Westinghouse acted under the immediate supervision of the Secretary of the Navy or any other officer, as required by the statute.

Moreover, Westinghouse has confused its burden of proof with regard to the "acting under" and "federal defense" requirements from *Mesa.* In paragraph 18 of the notice, Westinghouse states that it "has raised a more than colorable claim of having acted under a federal officer or agency." Notice at ¶ 18. The "colorable claim" standard applies to the presentation of a federal defense, not the causal connection requirement. *Mesa,* 489 U.S. at 132, 109 S.Ct. at 966. In order to remove to federal court, Westinghouse must set forth evidence showing that it did, in fact, act under a federal officer, a burden that Westinghouse has not satisfied.

Under circumstances akin to the instant case, the district court in *Crocker* used a similar affidavit by Gate to determine that Westinghouse "acted under" a federal officer. *Crocker,* 852 F.Supp. at 1325–26. The *Crocker* court stated: "The submission of the Gate affidavit, which is unrebutted, shows clearly that Westinghouse was acting under the direction of the Navy in the construction of marine turbines." *Id.* at 1326. I agree that the Gate affidavit does show that Westinghouse acted pursuant to Navy direction. Acting under the direction of the Navy, however, is not the same as acting under the direct and detailed control of a federal officer. I respectfully disagree with the district court in *Crocker* that its finding served as a proper basis upon which to permit removal by Westinghouse.

Westinghouse's poor showing of the causal connection between the allegations of plaintiffs and its conduct taken under direction of a federal officer is also evidenced by its failure to set forth the substance of the regulations and specifications. The complaint alleges personal injury based upon exposure to asbestos. Neither the notice or the affidavit establishes that the Secretary of the Navy specified the use of asbestos in the design and manufacture of the turbine generators. Westinghouse points to the holding in *Pack,* which permitted the removal of personal injury asbestos cases to federal district court in Maryland. In *Pack,* however, the court found that as part of the government's control and oversight it "would specify and approve the type of asbestos cloth to be used when insulating valves and flanges." *Pack,* 838 F.Supp. at 1103. Neither the notice nor the affidavit establishes that a federal officer required the use of asbestos in the design and manufacture of the turbine generators. In fact, neither of those documents relied on by Westinghouse even mention asbestos. Although other courts cited by Westinghouse may have permitted removal based upon general assertions that the government imposed specifications in the contracts, without the mention of asbestos as a particular component, I note that this lack of specificity further supports my conclusion that Westinghouse has not met its burden to make a causal connection between the state claim and the conduct undertaken pursuant to the direction given by an officer of the federal government.

In sum, the allegations of Westinghouse in its notice of removal and in the affidavit of Gate when taken at face value, even if true, are insufficient to prove the Westinghouse claim that it designed and manufactured the turbine generators pursuant to the direction of the Secretary of the Navy.

### D. *Colorable claim to federal defense*

The rule enunciated by the Supreme Court in *Mesa* requires a defendant seeking removal to assert a federal defense. *Mesa,* 489 U.S. at 128–29, 109 S.Ct. at 964–65. Westinghouse does not need to show for the purposes of removal that the defense is meritori-ous, but only whether there is a colorable claim to such a defense. *Id.* Westinghouse asserts the federal common law government contractor defense, as enunciated by the Supreme Court in *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Westinghouse has met the *Mesa* requirement of presenting a colorable claim to a federal defense; however, examination of this defense in light of the purpose of the federal officer removal statute supports my conclusion that removal is not appropriate in this case.

■ With the enactment of § 1442(a)(1), Congress intended to prevent state courts from interfering with the implementation of federal law. Congress realized that the federal government

> "can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in State court, for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,—if their protection must be left to the action of the State court,—the operations of the general government may at any time be arrested at the will of one of its members."

*Willingham v. Morgan,* 395 U.S. 402, 406, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1968) (quoting *Tennessee v. Davis,* 100 U.S. 257, 263, 25 L.Ed. 648 (1880)). Striving to protect the federal interest in the enforcement of federal law through federal officials, Congress enacted § 1442(a)(1) to provide a neutral forum in which federal officers could present their defenses. Most often the federal officer's defense was immunity. The Supreme Court has noted that the question of the immunity of federal officers named as defendants was complicated, often resolved by examining whether an officer's challenged actions exceeded the powers the sovereign had delegated to him. *International Primate,* 500 U.S. at 85–86, 111 S.Ct. at 1708–09. Determining whether a federal officer had acted ultra vires was "fraught with difficulty and subject to considerable manipulation." *Id.* at 86, 111

S.Ct. at 1709. Because of this potential manipulation in the atmosphere of state bias, Congress believed that federal officers needed the protection of a federal forum in which to raise their federal defenses. *Id.* at 86–87, 111 S.Ct. at 1709. Thus, Congress permitted removal because it was concerned with two factors: state interference with the implementation of federal policy AND state court manipulation of a federal defense. Where the first factor exists but the second factor does not, the Supreme Court has prohibited removal. For example, agencies have not been permitted to remove their cases under § 1442(a)(1) because the determination of an agency's immunity is "sufficiently straightforward that a state court, even if hostile to the federal interest, would be unlikely to disregard the law." *Id.* at 85, 111 S.Ct. at 1708.

■ The government contractor defense provides to a defendant who designs or manufactures products at the direction of the federal government an escape from liability for injuries caused by those products. To successfully invoke the defense, the supplier must show that the United States approved reasonably precise specifications; the equipment conformed to those specifications; and the supplier warned the United States about the dangers in the use of the equipment that were known to it but not to the United States. *Boyle,* 487 U.S. at 512, 108 S.Ct. at 2518.

■ The Supreme Court fashioned the government contract defense to displace state law because there exists a unique federal interest in civil liability arising out of the performance of federal procurement contracts. *Boyle,* 487 U.S. at 506, 108 S.Ct. at 2515. I question whether that federal interest exists in this case. The impact of this personal injury action on the federal interest in protecting future defense procurement—the fundamental point of the government contract defense—is speculative. It is common knowledge that asbestos is no longer used in the design and manufacture of equipment, so that this lawsuit cannot interfere with a federal program involving products that contain asbestos. Therefore, the adjudication of this personal injury action in state court does not threaten the enforcement of a federal policy sufficient to warrant removal.

Even assuming that the federal interest underlying the government contractor defense is present, simply noting the presence of a federal interest does not provide a sufficient or necessary basis to allow removal. "It is the concern for state court bias against the federal government that is the ultimate justification for ... removal." *Ryan,* 781 F.Supp. at 951. When enacting the federal officer removal statute, Congress sought to distinguish lawsuits on the basis of their susceptibility to state court manipulation. The government contractor defense is not subject to such manipulation. Unlike a federal officer's defense of immunity, the government contract defense by a corporation raises straightforward common law issues that state courts are as adept at handling as the federal judiciary. *Ryan,* 781 F.Supp. at 951.

## III. CONCLUSION

In cases where removal is doubtful, the case should be remanded. *Ryan,* 781 F.Supp. at 939; *Roche v. American Red Cross,* 680 F.Supp. 449, 451 (D.Mass.1988). Even assuming the timeliness of the notice of removal filed by Westinghouse, I hold that Westinghouse has not shown that it acted under an officer of the United States, thereby failing to satisfy the causal connection required by *Mesa.* Moreover, given the purpose of the federal officer removal statute and its intent to protect the enforcement of federal policy and preclude the manipulation of federal defenses, and having found that the existence of the first concern is speculative and that the second concern has been eliminated, removal is not appropriate in this case.

An appropriate order follows.

### · *ORDER*

**AND NOW,** this 18th day of January, 1996, upon consideration of the motion of Charles Good and Carolyn Good to remand (Document No. 4), and the response of Westinghouse Electric Corporation ("Westinghouse") thereto, having found that Westing-

house did not meet its burden of showing that removal is clearly appropriate pursuant to 28 U.S.C. § 1442(a)(1) by failing to set forth sufficient facts to demonstrate that it acted under an officer of the United States, it is hereby **ORDERED** that motion of plaintiffs Charles Good and Carolyn Good is **GRANTED.**

**IT IS FURTHER ORDERED** that the within action is **REMANDED** to the Court of Common Pleas of Philadelphia County, Pennsylvania at May Term 1993 No. 1736.

The Clerk of Court shall forthwith return the record to the Prothonotary of the Court of Common Pleas of Philadelphia County.