United States Court of Appeals,

Eleventh Circuit.

No. 93-8498.

UNITED STATES of America, Plaintiff-Appellee,

v.

Jody CANNON, Defendant-Appellant.

Jan. 6, 1995.

Appeal from the United States District Court for the Middle District of Georgia. (No. CR92-41-MAC-DF), Duross Fitzpatrick, Judge.

Before COX, Circuit Judge, and FAY, Senior Circuit Judge, and NELSON[*], District Judge.

FAY, Senior Circuit Judge:

This appeal arises from Cannon's two-count conviction for conspiring to defraud the United States government and for defrauding the government by using false documents. The jury acquitted Cannon on three other counts. The indicted activity involves improperly performed defense contracts for the United States Air Force ("USAF").

Cannon alleges many errors in the trial and at sentencing. First, Cannon alleges the trial judge abused his discretion by excluding evidence of metallurgical and ballistics testing by the government, in conjunction with this prosecution, long after the contracts had been performed. Cannon also alleges the trial judge abused his discretion in excluding evidence that the government accepted nonballistically tested titanium as conforming in later contracts with other parties that called for ballistically tested

---

[*]Honorable Edwin L. Nelson, U.S. District Judge for the Northern District of Alabama, sitting by designation.

titanium.  As to each of Cannon's allegations, we disagree.

Cannon alleges the evidence cannot support the conspiracy conviction on Count I under 18 U.S.C. § 371.  We disagree, and AFFIRM the conviction.

Cannon alleges the evidence cannot support the conviction on Count V for using false documents to defraud the government under 18 U.S.C. § 1001.  We agree, REVERSE the judgment, and REMAND with instructions to enter a not guilty judgment as a matter of law on Count V.

Cannon alleges the trial judge reversibly erred in admitting video-tape of a C-130 airplane and its connecting link presented at trial with live narration.  We disagree.

Cannon alleges prosecutorial misconduct, spanning the grand jury proceeding through closing argument, requires a new trial.  We disagree.

Cannon alleges the indictment failed to charge and the evidence cannot support a conviction on the theory of aiding and abetting.  In light of our finding that the evidence does not prove the DD 250 forms submitted to the government were false, we do not reach the issue of whether Cannon would be guilty of aiding and abetting had they been false.

Cannon alleges the trial judge wrongly computed his offense level at sentencing, wrongly used the full contract price as the amount of government loss, and wrongly found more than minimal planning, conscious or reckless risk of serious bodily injury, and an aggravating role as an organizer, leader, manager or supervisor by Cannon.  We disagree.

# I. BACKGROUND

Jody Cannon was General Manager at Space Age Manufacturing, Inc. ("Space Age"), in Warner Robins, Georgia, for approximately twenty years. He was General Manager when the indicted activity occurred.

Space Age contracted with the United States Air Force to supply parts for military aircraft. Count I of the superseding indictment charges Mr. Cannon with conspiring to defraud the government and to use false documents to elicit payment on government contracts that Cannon knew Space Age had not performed to military specifications. The jury convicted Mr. Cannon of this count (Count I). The superseding indictment also charged, among other violations, a substantive count (Count V) of using false documents to elicit payment on contracts Cannon knew were not performed to military specifications. The jury convicted Mr. Cannon on this substantive count and acquitted him on all other counts.

Both Counts I and V involved defense contracts between Space Age and the USAF. Count I, the conspiracy count, involved two types of parts the prosecution alleged did not conform: First, a throttle link assembly, which is used to feather a propeller on a C-130 aircraft.[1] Second, titanium armor plating for H-53 helicopters which the contract required to be ballistically tested—that is, to have defied penetration when shot with bullets. Space Age knowingly supplied nonballistically tested titanium.

---

[1]Feathering a propeller turns the propeller blades directly into the wind. Feathering alleviates wind drag because the wind blows through the blades instead of spinning them.

The indictment charges that Cannon, as General Manager, submitted bids for government contracts and placed orders for goods to fill those contracts. Cannon admits ordering the nonconforming titanium charged in Counts I and V in March of 1990. (R3-59; Appellant's Br. at 5). After using materials that did not conform to contract specifications, Space Age submitted DD 250 forms to the government Quality Assurance Representative ("QAR") for payment. The QAR reviews other documents when receiving the DD 250 and signs the DD 250, certifying that the contractor has met contract specifications and deserves payment. The government argues that by presenting the DD 250 to the QAR, Cannon "took affirmative actions to cause the QAR to accept the items, and to certify that they met the contract specifications, thereby causing the false documents to be made." (Appellee's Br. at 26). The substantive count depends on whether this government argument is correct as a matter of law.

## II. STANDARD OF REVIEW

This appeal requires review of findings of fact, conclusions of law, and discretionary rulings on whether to admit or exclude evidence.

We will not disturb the trial judge's decision to admit or exclude evidence absent a clear showing of abuse of discretion. *United States v. Russell,* 703 F.2d 1243, 1249 (11th Cir.1983).

We subject sufficiency of the evidence, a question of law, to *de novo* review. *United States v. Kelly,* 888 F.2d 732, 739 (11th Cir.1989). We view the evidence in the light most favorable to the government, including all reasonable inferences and credibility judgments. *See Glasser v. United States,* 315 U.S. 60, 62 S.Ct.

457, 86 L.Ed. 680 (1942). We ask whether a reasonable trier of fact, when choosing among reasonable constructions of the evidence, could have found the defendant guilty beyond a reasonable doubt. *Kelly,* 883 F.2d at 740.

Prosecutorial conduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced Cannon's substantive rights. *United States v. Cole,* 755 F.2d 748, 767 (11th Cir.1985). We review them in context and assess the probable jury impact. *United States v. Stefan,* 784 F.2d 1093, 1100 (11th Cir.1986).

We review the indictment's sufficiency for whether it contains every element of the offense charged and adequately informs the accused of the charge being lodged. *Stefan,* 784 F.2d 1093, 1101-02 (11th Cir.1986).

We do not disturb the sentencing court's fact findings absent clear error. *United States v. Davis,* 902 F.2d 860, 861 (11th Cir.1990). Nonetheless, we review *de novo* the sentencing court's Federal Sentencing Guidelines application to those facts. *United States v. Rodriquez,* 959 F.2d 193 (11th Cir.1992), *cert. denied, ---- U.S. ----,* 113 S.Ct. 649, 121 L.Ed.2d 563 (1992).

The sentencing court may consider defendant's conduct not covered by counts of conviction if the government proves their existence by the greater weight of the evidence. *See United States v. Alston,* 895 F.2d 1362, 1372-73 (11th Cir.1990).

### III. ANALYSIS

#### A. Procedure

This Court at oral argument questioned whether Cannon had

waived appeal on Counts I and V by failing to move for a judgment of acquittal on each of these counts.  He did not.  Cannon moved for judgment of acquittal on August 27, 1993, the seventh day after jury discharge.  This motion is proper under Fed.R.Crim.P. 29(c) and preserved the issues for appeal.

## B. Evidentiary Rulings

We find the trial judge did not abuse his discretion by excluding evidence of metallurgical[2] and ballistics testing by the government.  The record indicates the government, in connection with Cannon's prosecution, seized titanium from Space Age in January of 1991.  This titanium passed government ballistics tests. Cannon argues that because the titanium passed the ballistics test, it negates a finding of his intent to defraud the government.  We disagree.

First, Cannon did not show the titanium seized in the search came from the batch used to perform the contract implicated in Count V.  Indeed, the government witness, a Space Age supplier, testified that she had no way of knowing whence the titanium came, who bought it, who sold it, when or in connection with what contract it was sold.  (R3-129-30).  Second, even if Cannon had traced this titanium to the contract in Count V, it would not matter.  That the nonballistically tested titanium supplied by Space Age later passed ballistics tests does not pardon the deceit of having supplied nonconforming, nonballistically tested titanium in a contract requiring ballistically tested titanium.  In short,

---

[2]Metallurgical tests analyze metals and their properties in bulk and at the atomic level. *See The American Heritage Dictionary of the English Language* 824 (New College Ed.1976).

titanium that *could* pass the ballistics test is not equal to titanium that *has* passed the ballistics test. The government contracted and paid for the latter; Space Age's substitution of the former, without government consent, does not negate the government's showing of intent to defraud. The trial judge did not abuse his discretion in excluding evidence of these after-the-fact, government-conducted tests. Likewise, evidence of government condoned substitutions in later contracts with other, unrelated parties does not affect the government's showing of intent to defraud.

Further, we find the trial judge did not abuse his discretion in admitting the C-130 aircraft videotape with live narration.

## C. Findings of Fact

Upon review of the sentencing court's fact findings, we find no clear error. The sentencing court found the government's monetary loss to be the contract value. The United States Sentencing Commission Guidelines Manual, § 2F1.1 Application Note 7, states that "[f]requently, loss in a fraud case will be the same as in a theft case." Further, § 2F1.1 refers "valuation of loss" to the discussion in § 2B1.1, which provides that "[w]here the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim." Following these instructions, we find the sentencing court did not clearly err in finding the contract value was the amount of loss. Having found the loss to be between $120,000 and $200,000, the sentencing court properly increased Cannon's offense level by seven points.

*See* § 2F1.1(b)(1)(H).

The sentencing court did not clearly err in increasing Cannon's offense level by two points for more than minimal planning. Under §§ 2F1.1(b)(2)(A) and 1B1.1 Application Note 1(f), we find no clear error in increasing Cannon's offense level for "affirmative steps ... taken to conceal the offense." Agent Phillips testified that Cannon told her he altered certification forms from other contracts to conceal the substitution of nonconforming titanium. Further, Note 1(f) states that more than minimal planning "is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." The acts charged in Count I involve numerous contracts spanning a four-and-a-half year period. The law in this Circuit permits a sentencing court to

> consider evidence of the defendant's conduct relating to counts on which the defendant was indicted but acquitted at trial[.]

· · · · ·

> Acquitted conduct may be considered by a sentencing court because a verdict of acquittal demonstrates a lack of proof sufficient to meet a beyond-a-reasonable-doubt standard—a standard of proof higher than that required for consideration of relevant conduct at sentencing.

*United States v. Averi,* 922 F.2d 765, 765-66 (11th Cir.1991). Accordingly, the sentencing court could properly consider the conduct charged in Counts II-IV as well, so long as the government proved them by the greater weight of the evidence. *See United States v. Alston,* 895 F.2d 1362, 1372-73 (11th Cir.1990). Following the guidelines, we find the sentencing court did not clearly err by increasing the offense level for "more than minimal

planning."

Cannon argues the sentencing court erred in increasing his offense level for "conscious or reckless risk of serious bodily injury." We disagree. Cannon ordered nonballistically tested titanium to make armor plating on H-53 helicopters. The USAF paid for titanium that *had* passed the ballistics test, not titanium that *might* pass the test. Further, Agent Phillips testified that Cannon told her "inferior bearings had been substituted on the [connecting link assemblies used to feather propellers on a C-130 aircraft] versus installing the bearings that were called out for in the government specifications ... [and that] based on his 20 years experience in the aircraft industry, that the inferior bearings would crack under pressure." (R2-71). We find that the sentencing court did not clearly err when it found the government had proved "conscious or reckless risk of serious bodily injury" by the greater weight of the evidence.[3]

Finally, Cannon argues that the sentencing court erroneously applied § 3B1.1(c)—"aggravating role as an organizer, leader, manager, or supervisor." We disagree. The Introductory Commentary to § 3B1.1

> provides adjustments to the offense level based upon the role the defendant played in committing the offense ... [which is determined] on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.,* all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction.

---

[3]It is most reasonable to consider the loss of life or serious bodily injury that can occur when essential parts of an aircraft fail. To argue that there is no evidence of a failure *yet* is to completely ignore the reason for the standards established in the contracts, to wit: the safety of all personnel using the aircraft.

Based on this instruction and the laundry list of considerable factors listed in § 3B1.1 Application Note 4, we find the sentencing court did not clearly err by increasing the offense level under this section.

### D. Conclusions of Law

#### i. Count One:  The Conspiracy Count

The jury convicted Cannon under 18 U.S.C. § 371 for "Conspiracy to commit offense or to defraud United States."  The statute commands

> [i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The government identified Cannon's unindicted coconspirators as Space Age Manufacturing, Inc., and Space Age's President, Jack C. Kerstetter.  Cannon placed bids, signed the contracts at issue, and knowingly purchased nonconforming titanium.  Cannon and Kerstetter discussed that ordering conforming titanium would cause Space Age to lose money.  While Cannon argues that he purchased the titanium because Kerstetter "ordered" him to do it, this does not absolve his actions.  Cannon, Space Age & Kerstetter gave the USAF titanium with less pecuniary value than the titanium it contracted for, and with less performance value than the titanium it contracted for.

Viewing the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), including all reasonable inferences and credibility judgments, we find that a reasonable trier of fact, when choosing among reasonable constructions of the evidence, could

have found the defendant guilty beyond a reasonable doubt. *United States v. Kelly,* 888 F.2d 732, 740 (11th Cir.1989). We affirm Cannon's conviction on Count I.

*ii. Count Five:  The Substantive Count*

Cannon argues the evidence cannot support a conviction on Count V pursuant to 18 U.S.C. § 1001. We agree.

The government had to prove Cannon knowingly and willfully falsified, concealed or covered up by trick, scheme, or device a material fact, or made false, fictitious or fraudulent statements or representations, or made or used any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry. *See* 18 U.S.C. § 1001.

The government charged in the indictment that Cannon violated § 1001 because he "used and caused to be used a Form DD 250[.]" Despite the jury verdict, as a matter of law, the government failed to prove the DD 250 forms were false. The government argues that "when [the contractor] submits the document [DD 250, he] is telling the government that he has manufactured the items according to the government specifications, and that he is ready to deliver them so that he can be paid." Appellee's Br. at 25. Nowhere on the DD 250 does Cannon or anyone at Space Age certify that the parts supplied conform to the contract. Rather, the government QAR signs the form signifying acceptance and conformance of the goods.

The government argues Cannon caused the QAR to make a false statement by presenting the DD 250 forms, representing to him that the contracts had been performed to specifications, and having the QAR sign the DD 250, accepting the items and certifying that they

met the contract specifications. *See id.* at 25-26. We disagree.

The government's only shred of evidence to show the QAR signed the DD 250 forms because of false representations was the QAR's testimony that he would not have signed the DD 250 unless he'd been presented with a document certifying the titanium as ballistically tested. Agent Phillips, however, testified that when the government seized the file for the contract charged in Count V, the only certification form it contained showed no signs of tampering and was for nonballistically tested titanium. (R3-61-62). Although the titanium did not conform, the documents did not lie. It was through the failure of the QAR to perform an adequate review that the nonconforming material was certified.

Viewing the evidence in the light most favorable to the government, *see Glasser,* 315 U.S. 60, 62 S.Ct. 457, including all reasonable inferences and credibility judgments, we hold that no reasonable trier of fact, when choosing among reasonable constructions of this evidence, could have found the defendant guilty beyond a reasonable doubt of *using false documents or representations to defraud the government. See Kelly,* 888 F.2d at 740. The district court reversibly erred when it denied Cannon's motion for judgment of acquittal on Count V.

### E. Miscellaneous

#### i. Prosecutorial Misconduct

The transcript of the government's closing argument shows no prosecutorial remarks that either (1) were improper or (2) prejudiced Cannon's substantive rights. (R6-157-65); *see United States v. Cole,* 755 F.2d 748, 676 (11th Cir.1985). The Assistant

United States Attorney, Ms. Duke, contrary to Cannon's argument on appeal, did not argue that the titanium supplied by Space Age "would not work or perform under fire." Appellant's Br. at 13. Rather, she argued that the titanium "may indeed pass a ballistic tests [sic], but the only way you're going to know that is if you get shot at." (R6-156). Ms. Duke's statement is correct. After-the-fact testing cannot cure the initial failure to supply tested titanium. Indeed, we stress that the record shows the only ballistics testing on this titanium was done *by the government in connection with this prosecution.* Moreover, as discussed in III.B., the titanium that passed the tests has not been proved to be related to the batch used in performing the contracts. At this point, the Air Force can only hope such is the case.[4]

Accordingly, we find the remarks were proper, and when reviewed in context, assessing the probable jury impact, we find no prejudice to Mr. Cannon's substantive rights. *See Stefan,* 784 F.2d 1093, 1100 (11th Cir.1986). The district court properly denied Cannon's motion for a mistrial. Finding no merit to any of Cannon's prosecutorial misconduct allegations, we deny his request for a new trial.

### ii. Indictment Sufficiency

Based on our finding in III.D.ii. that the DD 250 forms cannot support a conviction under 18 U.S.C. § 1001, and resulting reversal of Count V, we need not discuss whether the indictment sufficiently charged aiding and abetting in that count.

---

[4]By now, most of the ball bearings in the link assemblies may have been tested.

## IV. CONCLUSION

We hold that the district court (1) did not abuse its discretion in ruling on evidence;  (2) did not clearly err in its fact findings;  (3) properly denied Cannon's motion for a mistrial;  (4) properly denied Cannon's motion for a judgment of acquittal on Count I;  and (5) reversibly erred, as a matter of law, when it denied Cannon's motion for a judgment of acquittal on Count V.  We REVERSE and REMAND with instructions to enter a not guilty judgment as a matter of law on Count V.  The judgment of the district court as to Count I is Affirmed.

AFFIRMED in part;  REVERSED in part, and REMANDED.