UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-41341
SUMMARY CALENDAR
_____

RODNEY A. MILLER,

Plaintiff-Appellant,

V.

DIAMOND SHAMROCK CO.; DIAMOND SHAMROCK CHEMICAL COMPANY,
also known as Occidental Chemical Corporation; DOW CHEMICAL COMPANY; MONSANTO
COMPANY; UNIROYAL, INC.; HERCULES, INC.;
THOMPSON-HAYWARD CHEMICAL COMPANY, also known as Thompson Chemicals;
T. H. AGRICULTURAL & NUTRITION, INC.,

Defendants-Appellees.

_____

On Appeal from the United States District Court for the
Southern District of Texas
(C-95-CV-351)
_____

**October 30, 2001**

Before **REYNALDO G. GARZA**, **BARKSDALE**, and **STEWART**, Circuit Judges.

**REYNALDO G. GARZA**, Circuit Judge:[1]

This case is yet another episode in the great Agent Orange saga. In this appeal, we review

the district court's decision to grant the defendants-appellees' motion for summary judgment

_____

[1] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

-1-

where the decision was based exclusively on the military contractor defense. We also review the district court's decision to deny the plaintiffs-appellants' motion to remand the case to state court. Because we can find no error in the court's decisions, we affirm both rulings.

**I**

The defendants are seven chemical companies, each of which entered into contracts with the United States during the 1960s to provide the government with "Agent Orange," a herbicide used as a defoliant by the military in Vietnam. Agent Orange is an equal mix of 2,4-Dichlorophenoxyacetic Acid ("2,4-D") and 2,4,5-Trichlorophenoxyacetic Acid ("2,4,5-T"). Agent Orange contains varying amounts of a toxic substance known as 2,3,7,8 Tetrachlorodibenzo-p-dioxin ("dioxin").[2] Dioxin has been linked to various maladies such as liver cancer and chloracne.

The plaintiffs are civilians, some of whom worked at the Corpus Christi Army Depot in Corpus Christi, Texas, at various times over the past 40 years. These workers claim they were exposed to Agent Orange while working on aircraft that used the defoliant in Vietnam. The other plaintiffs are the workers' spouses and children. They claim that they were exposed to Agent Orange through physical contact with the workers or with the workers' clothing. The plaintiffs allege that their exposure to Agent Orange has caused various maladies and cancers.

The plaintiffs originally brought suit in state court. The defendants, however, removed the case to district court based on the Federal Officer Removal Statute. 28 U.S.C. § 1442(a)(1). The

---

[2] Apparently, there has been some confusion as to the relationship between Agent Orange and dioxin. We have previously stated that the mixture of 2,4-D and 2,4,5-T contained dioxin. *See Winters v. Shamrock Chemical Co.*, 149 F.3d 387, 390 (5th Cir. 1997). This statement is misleading. Actually, 2,4,5-T contains dioxin, and 2,4-D does not. Thus, Agent Orange contains dioxin only because it contains 2,4,5-T.

plaintiffs unsuccessfully moved to remand. The defendants then filed a motion for summary judgment based on the military contractor defense. The district court granted the motion and entered final judgment in favor of the defendants. The plaintiffs appeal both decisions.

**II**

We review the denial of a motion to remand *de novo*. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001). "This standard of review applies even where the district court makes certain findings of fact in denying the motion to remand." *Winters v. Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1997). Because the defendants invoked the removal jurisdiction of the district court, they bore the burden of establishing jurisdiction. *See Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921–22 (5th Cir. 1997). Because the defendants met their burden, the district court properly denied the plaintiffs' motion to remand.

This Court has already given full treatment to the questions posed by the plaintiffs' motion to remand. *Winters v. Shamrock Chemical Co.* is identical to the present action in all relevant respects. 149 F.3d 387 (5th Cir. 1997), *aff'g* 901 F.Supp. 1195 (E.D. Tex. 1995), *cert. denied*, 526 U.S. 1034 (1999). In *Winters*, the plaintiff brought suit in state court against the same defendants in the present action. She alleged that her exposure to Agent Orange while in Vietnam had caused her to develop cancer. *Id.* at 390. As they did the present action, the defendants in *Winter*s removed the case to federal court pursuant to the Federal Officer Removal Statute. *Id.* The district court denied the plaintiff's motion to remand, and this Court affirmed. *Id.* at 404.

The Federal Officer Removal Statute provides in relevant part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1)  The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1); *see Winters*, 149 F.3d at 390.  In denying Winters's motion to remand, the district court found that the defendants:  (1) were "persons," (2) "acting under color of federal authority" when committing the acts that allegedly caused her injuries, and (3) had asserted a colorable federal defense. *Id.* at 397.  As in the present action, the colorable federal defense asserted by the defendants in *Winters* was the military contractor defense. *Id.* at 400.

The plaintiffs do not dispute the legal reasoning of the *Winters* decision.  Rather, they attempt to distinguish it.  The plaintiffs argue that *Winters* was based on the erroneous assumption that the mixing of 2, 4-D and 2, 4, 5-T created a product more toxic than either of the components individually.  The plaintiffs then offer proof that only 2, 4, 5-T contains dioxin, so the addition of 2, 4-D actually creates a less toxic product.  According to the plaintiffs, the defendants were not acting under the color of federal authority when they made 2, 4, 5-T, which contains dioxin.  Thus, as the plaintiff's argument follows, there was no causal connection between the defendants' actions that gave rise to this suit—making 2, 4, 5-T—and the defendants's actions that were under the direction of the federal government—mixing 2, 4, 5-T and 2, 4-D to make Agent Orange.

The argument fails on both its premise and its conclusion.  The determination that the defendants in *Winters* were acting under color of federal authority was never based on any perceived increase in toxicity of the combination of 2, 4-D and 2, 4, 5-T.  Rather, it was based on evidence that indicated the government's "strict control over the development and subsequent

-4-

production of Agent Orange." *Id.* at 399.  The government specifically asked the defendants to produce Agent Orange using 2, 4, 5-T.  Thus, the defendants were acting under color of federal authority when they used 2, 4, 5-T to make Agent Orange.

Further, the plaintiffs are not suing the defendants because they were exposed to dioxin generally.  Rather, they are suing because they were exposed to the dioxin contained in Agent Orange specifically.  Therefore, it was the production of Agent Orange that gave rise to this suit, and we find that the defendants produced Agent Orange at the behest of the federal government. The plaintiffs have failed to distinguish the instant action from *Winters*.  Because the defendants have demonstrated their right to a federal forum under the Federal Officer Removal Statute, we affirm the district court's decision to deny the plaintiffs' motion to remand.

### III

We review the grant of summary judgment *de novo*. *See Veeck v. S. Bldg. Code Congress, Int'l, Inc.*, 241 F.3d 398, 402 (5th Cir. 2001).  Summary judgment is proper only if the record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  There is no genuine issue of fact if, after viewing the evidence in a light most favorable to the nonmoving party, a reasonable fact finder could not find in favor of the nonmoving party. *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).

The district court granted summary judgment under the military contractor defense. Under the proper circumstances, the military contractor defense shields a contractor from liability for a defect in an item it built or manufactured at the government's direction.  "Subjecting military contractors to full tort liability would inject the judicial branch into political and military decisions

that are beyond its constitutional authority and institutional competence." *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 187, 191 (2d Cir. 1987); *see also Boyle v. United Techs. Corp.*, 487 U.S. 500, 511–12 (1988).

To invoke the military contractor defense, the defendants must prove that:  (1) the government approved reasonably precise specifications for the item; (2) the item conformed to those specifications; and (3) the contractor warned the government about the dangers from the use of the item that were known to the contractor but not to the government. *See Boyle*, 487 U.S. at 512.  Because we find no genuine issues of material fact with respect to any one of these issues, we affirm the district court's decision.

## A

The first element of the defense is that the government must have approved reasonably precise specifications for the item to be manufactured. *Id.* at 512.  This assures that "the government, and not the contractor, is exercising discretion in selecting the design." *Stout v. Borg-Warner Corp.*, 933 F.2d F.2d 331, 334 (5th Cir. 1991).  It is clear from the record that the United States government provided the defendants with exacting specifications for Agent Orange.

In 1963, the Army Munitions Command prepared and promulgated Military Specifications, MIL-H-51147(MU), 19 July 1963, "Herbicide 2,4-dichlorophenoxy-acetate" and MIL-H-51148(MU), 19 July 1963, "Herbicide 2,4,5-trichlorophenoxyacetate."  These specifications defined all facets of their respective chemical's composition, including its appearance, free acid content, moisture content, packing, and marking.  Further, the military ordered Agent Orange pursuant to purchase descriptions such as AFPID 6840-1, 23 Feb. 1968, "Herbicide-Orange."  These purchase descriptions defined the end-product, Agent Orange, with

equal specificity. Such specifications were more than reasonably precise.

The plaintiffs do not dispute the precision of the military specifications. Instead, they argue that Agent Orange was an "off-the-shelf product," and as such, it was not covered by the military contractor defense. The plaintiffs contend that, because the defendants sold 2,4,5-T and 2,4-D of varying strengths commercially before the war in Vietnam, the mixture called Agent Orange, which was sold to the military, was an off-the-shelf product.

This argument confuses the law and misapplies it to the facts. The plaintiffs argue that this "off-the-shelf limitation" is a new, *fourth* element of the military contractor defense. Yet, no court has held that the supplier of an off-the-shelf item is ineligible for protection under the military contractor defense,[3] and we need not decide the issue here. The plaintiffs have failed to demonstrate a genuine factual dispute that Agent Orange was an off-the-shelf product.

The plaintiffs do not claim that Agent Orange was sold commercially before the war in Vietnam. Instead, they contend that its component parts were. According to the plaintiffs, if the parts are off-the-shelf, the whole must be as well. Nonetheless, such an argument would lead us to an absurd result. As the district court noted, all products can eventually be broken down into various off-the-shelf components. *See* Record on Appeal at Vol. III, 37–38. The combination of off-the-shelf component parts does not necessarily create a new off-the-shelf product. The plaintiffs offer no evidence that the mixture known as Agent Orange was an off-the-shelf product.

**B**

To invoke the military contractor defense the defendants must establish that the item

---

[3] In any event, the fact that the military contractor has provided the government with an off-the-shelf product would be relevant to the first element of the military contractor defense. Creating a separate, fourth element would be unnecessary.

procured conformed to the government specifications. *Boyle*, 487 U.S. at 512.  This also assures that "the government, and not the contractor, is exercising discretion in selecting the design." *Stout*, 933 F.2d at 334.  Given the evidence before the court, a reasonable fact finder could not conclude that the Agent Orange produced by the defendants failed to conform to the government specifications.

Acceptance and use of an item following its production can establish that the item conformed to its specifications. *See Kerstetter v. Pacific Sci. Co.*, 210 F.3d 431, 435 (5th Cir. 2000); *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570, 575 (5th Cir. 1996). Moreover, the government's issuance of a DD Form 250, Material Inspection and Receiving Report, further establishes the item's conformity. *See, e.g.*, *Tate v. Boeing Helicopters*, 921 F.Supp. 1562, 1567 (W.D. Ky. 1996), *affirmed* 140 F.3d 654 (6th Cir. 1998) (Defendants were entitled to summary judgment on the second prong of the government contractor defense because the Army executed a "DD250" documenting an operating manual's conformance to its specifications.); *United States v. Cannon*, 41 F.3d 1462, 1468 (11th Cir. 1995) (The signing of a DD Form 250 signifies the government's acceptance and the "conformance of the goods."); *Quiles v. Sikorsky Aircraft*, 84 F.Supp.2d 154, 167 (D. Mass. 1999) (Although it is not dispositive, "initial acceptance by the United States government, in the form of a signed DD-250, is some evidence that the aircraft complied with specifications."); *Hendrix v. Bell Helicopter Textron, Inc.*, 634 F.Supp. 1551, 1557 (N.D. Tex. 1986) (Absent proof that the government's acceptance of a helicopter was not correct, the "DD250 acceptance conclusively established that [the] helicopter . . . conformed to the contract specifications").  Each shipment of Agent Orange was inspected by the government, and the inspectors issued a DD Form 250 for each shipment that

had been inspected and accepted. Agent Orange was then used extensively throughout Vietnam. No reasonable trier of fact could find that Agent Orange did not conform to the specifications provided by the military.

The plaintiffs do not dispute that the defendants' Agent Orange conformed to the military's specifications as those specifications were expressly formulated. The plaintiffs claim that the Agent Orange produced by the defendants failed to conform because it included dioxin, a toxic chemical that the specifications did not expressly request. According to the plaintiffs, the absence of an express request for something as significant as dioxin is a direct indication that the military did not wish dioxin to be included.

This argument is problematic in two respects. First, it is unclear why the government would remain silent with respect to dioxin if the government wished to forbid its inclusion. An express prohibition would have been much more effective.

Second, Agent Orange could not have been made according to the government's specifications without including dioxin, because the government specifically requested that Agent Orange be made with 2, 4, 5-T. For there to be nonconformity, "[t]he alleged defect must exist independently of the design itself, and must result from a deviation from the required military specifications." *Kerstetter v. Pacific Sci. Co.*, 210 F.3d 431, 435 (5th Cir. 2000). The alleged defect was the inclusion of dioxin in Agent Orange. Dioxin was included because 2, 4, 5-T was included. Thus, the alleged defect resulted not from a deviation from the required military specifications, but from the defendants' strict adherence to them.

## C

Finally, to be protected by the military contractor defense, the contractor must have

warned the government about dangers of the item that were known to the contractor but not to the government. *Boyle*, 487 U.S. at 512. This "eliminate[s] any incentive that this defense may create for contractors to withhold knowledge of risks." *Stout*, 933 F.2d at 334. No one can reasonably dispute the fact that the government possessed information about the potential dangers of Agent Orange that was as great as, if not greater than, that possessed by the defendants.

The Second Circuit has addressed this element in the context of a summary judgment motion. *In re Agent Orange Product Liability Litigation, MDL No. 381*, 818 F.2d 187, 191 (2d Cir. 1987), *aff'g* 611 F.Supp. 1223, 1263 (E.D.N.Y. 1985), *cert. denied sub nom. Lombardi v. Dow*, 487 U.S. 1234 (1988). In that case, the district court granted summary judgment for the defendants, based in part on the military contractor defense. *See* 611 F.Supp. at 1263–64. The Second Circuit affirmed, noting that no genuine issue of material fact existed as to whether the chemical companies had a duty to inform the government of the potential hazards of Agent Orange because of "the paucity of scientific evidence that Agent Orange was in fact hazardous." 818 F.2d at 193. Judge Weinstein, whose experience with this multidistrict litigation makes him an authority on the subject, noted at the trial level that "[i]t is clear from the record, in light of all the information received to date, that the government knew as much as, or more than, the defendant chemical companies about the possible adverse health effects of Agent Orange as it was used in Vietnam," 611 F.Supp. at 1263, and the Second Circuit unequivocally echoed this finding: "We agree with the district court that the information possessed by the government at pertinent times was a great as, or greater than, that possessed by the chemical companies." 818 F.2d at 189–90.

The factual record before this Court presents the same relevant facts that were before the

Second Circuit. Although the decision is not binding on this Court, we find its treatment of the law and application of the facts to be sound and persuasive. The plaintiffs do not argue that the Second Circuit erred in affirming Judge Weinstein's grant of summary judgment. Rather, they argue that the law has changed since that decision and that additional evidence demonstrates the existence of a factual dispute.[4] We find the first of these arguments to be incorrect and the second to be unpersuasive.[5]

The plaintiffs argue that, under the Supreme Court's decision in *Boyle*, even constructive knowledge of the potential hazards of Agent Orange on the part of the defendants would defeat the military contractor defense. This is contrary to the clearly established case law. "The government contractor defense does *not* require a contractor to warn the government of defects about which it only *should* have known." *Kerstetter v. Pacific Sci. Co.*, 210 F.3d 431, 436 (5th Cir. 2000) (emphasis added). "After *Boyle*, a government contractor is *only* responsible for warning the government of dangers about which it has *actual* knowledge." *Trevino v. General*

_____

[4] The plaintiffs have introduced the affidavit of Elmo Russell Zumwalt, Jr., the Commander of the U.S. Naval Forces in Vietnam, in which Admiral Zumwalt indicates that he had no knowledge of the potential hazards of using Agent Orange and that he had received no warnings of any such hazards from the defendants. It is upon this affidavit alone that the plaintiff's distinguish the present action. *See* Record on Appeal at Vol. III, 316 n.1.

[5] It should also be noted that the plaintiffs' argument that the government had insufficient knowledge concerning Agent Orange and dioxin contradicts their earlier argument that the government, knowing the significance of dioxin, would have explicitly included it in the specifications for Agent Orange. *See supra* Part III.B. The plaintiffs cannot have it both ways. Either the government had sufficient knowledge concerning dioxin for the plaintiffs' challenge to the second element, or the government had insufficient knowledge for the plaintiffs' challenge to the third.

*Dynamics Corp.*, 865 F.2d 1474, 1487 (5th Cir. 1989) (emphasis added).[6]

The plaintiffs also argue that any knowledge possessed by certain low-level government officials about the potential toxicity of Agent Orange cannot be imputed to the government as a whole for purposes of the military contractor defense. The plaintiffs do not dispute the factual record establishing the government's knowledge. Instead, they point to this Court's opinion in *United States v. Currency Totaling $48,318.08*, which held that the actual knowledge of a U.S. customs agent may not be imputed to the government as a whole without proof that the agent had a duty to reveal his knowledge. 609 F.2d 210, 215 (5th Cir. 1980). According to the plaintiffs, because there is no evidence that the information possessed by the low-level government employees was specifically presented the President, the Secretary of Defense, or any of the field commanders in Vietnam, a factual dispute exists with respect to the third element of the military contractor defense.

The plaintiffs' argument stretches the rule in *Currency* beyond its breaking point. Whereas that case involved the knowledge of an individual agent, the present action involves pervasive

---

[6] Further, imposing liability on military contractors for latent defects would defeat the purpose of the military contractor defense. The defense shields military contractors from liability in order to protect the discretionary function of military procurement. *See Boyle*, 487 U.S. at 511. "[T]he selection of an appropriate design for military equipment . . . often involves not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness." *Id.* The military must often make decisions that civilians would not, and "[c]ivilian judges and juries are not competent to weigh the cost of injuries caused by a product against the cost of avoidance in lost military efficiency." *In re Agent Orange*, 818 F.2d at 191. "Whereas judges and juries may demand extensive safety testing for goods marketed in the civilian sector, such testing could impose costs and delays inconsistent with military imperatives." *Id.* Imposing liability on military contractors for latent defects would make them very reluctant to provide equipment that has not been fully tested even where the military has determined that delay would compromise military imperatives. This result defeats the purpose of the military contractor defense.

institutional knowledge, even if only among the lower echelons of the government. There can be no reasonable dispute that knowledge possessed by the United States Public Health Service, the Army Chemical Corps Chemical Warfare Laboratories, the President's Science Advisory Committee, the National Academy of Sciences, the Office of the Army Surgeon General, the Navy's Bureau of Medicine and Surgery, and the Advanced Research Project Agency of the Department of Defense is the knowledge of the military. *See In re "Agent Orange" Prod. Liab. Litig.*, 565 F.Supp. 1263, 1266–68 (E.D.N.Y. 1983); *In re Agent Orange*, 579 F.Supp. at 797–99. Knowledge of the military is knowledge of the government for purposes of the military contractor defense. Judge Weinstein, who has addressed this precise argument in an earlier episode of the Agent Orange litigation, came to the same conclusion:

> Plaintiffs argue that because of the complex nature of the United States Government, knowledge on the part of employees within various agencies, particularly at the lower echelons, cannot be imputed to the White House or the Secretary of Defense. Their position appears to be an overstatement of the knowledge requirement. Neither the Secretary of Defense nor the President are "the government." Widespread knowledge among lower echelons can be attributed to the Executive.

*In re "Agent Orange" Prod. Liab. Litig.*, 579 F.Supp. 740, 796 (E.D.N.Y. 1984).

The plaintiffs have failed to demonstrate any genuine issue of material fact with respect to any one of the three elements of the military contractor defense. Thus, the district court properly granted the defendants' motion for summary judgment. Accordingly, we affirm.

## IV

We AFFIRM the district court's judgment denying the plaintiffs' motion to remand the instant action to state court. We also AFFIRM the district court's judgment granting summary judgment to the defendants based on the military contractor defense.

-13-