## In re "AGENT ORANGE", PRODUCT LIABILITY LITIGATION.

### Joe Isaacson and Phillis Lisa Isaacson, Plaintiffs,

v.

### Dow Chemical Company, et al., Defendants.

No. MDL 381.
No. 98–CV–6383 JBW.

United States District Court, E.D. New York.

Feb. 9, 2004.

Williams, Cuker, Berezofsky by Mark R. Kuker, Dan Bencivenga, Cherry Hill, NJ, Smoger & Associates by Gerson Smoger, Oakland, CA, for Plaintiffs Joe Isaacson and Phillis Lisa Isaacson.

Kelley Drye & Warren, LLP by William A. Krohley, Willam C. Heck, New York City, for Defendant Hercules, Inc.

Rivkin Radler & Kremer by Steven Brock, James V. Aiosa, Uniondale, NY, Orrick, Herrington & Sutcliffe, LLP by James Lamont Stengel, New York City, for Defendant The Dow Chemical Company.

Cadwalader, Wickersham & Taft, LLP by Michael M. Gordon, New York City, for Defendant Occidental Chemical Corporation.

Seyfarth Shaw, LLP by John C. Sabetta; Andrew T. Hahn, Sr., New York City, Latham & Watkins by James E. Tyrrell,

Newark, NJ, for Defendant Monsanto Company.

Myron Kalish, New York City, for Defendant Omniroyal, Inc.

Clark, Gagliardi & Miller by Lawrence T. D'Aloise, White Plains, NY, for Defendants T.H. Agriculture & Nutrition Co.

## MEMORANDUM & ORDER (REMOVAL)

WEINSTEIN, Senior District Judge.

### Table of Contents

I. Introduction—444

II. Facts—445

III. Law—445

    A. General Rule—445

    B. Elements of Section 1442(a)(1)—447

    1. Definition of Person—447

    2. Acting Under Color of Federal Office—447

    3. Colorable Claim to a Federal Law Defense—448

IV. Application of Law to Facts—449

V. Policy Considerations Supporting Removal—451

VI. Conclusion—451

### I. Introduction

Plaintiff, Joe Isaacson, is a Vietnam veteran. He claims injuries from exposure to Agent Orange during his service in Vietnam from 1968 to 1969. Defendants manufactured and sold Agent Orange to the United States for use by the military as a defoliant in Vietnam. This case has been remanded to determine whether there is federal jurisdiction. *See Stephenson v. Dow Chemical Co.*, 346 F.3d 19 (2d Cir. 2003).

Originally filed in New Jersey state court, the complaint alleged claims under state law only. Defendants removed the case to federal court, asserting a variety of jurisdictional grounds: 28 U.S.C. §§ 1651 (All Writs Act), 1442 (acting under federal officer), 1332 (diversity), and 1331 (federal question). The District Court for the District of New Jersey approved removal based on the All Writs Act, 28 U.S.C. § 1651. The case was then transferred to this court by the Multidistrict Panel. MDL 381. The Court of Appeals for the Second Circuit approved removal solely on the basis of the All Writs Act. *Stephenson v. Dow Chemical Co.*, 273 F.3d 249 (2d Cir.2001).

The Supreme Court remanded in light of its holding in *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002), indicating that the All Writs Act alone would not support removal. *Dow Chemical Co. v. Stephenson*, 539 U.S. 111, 123 S.Ct. 2161, 156 L.Ed.2d 106 (2003) (per curiam). On remand from the Supreme Court, the Second Circuit determined that jurisdiction could not be grounded in the All Writs Act and remanded the case to this court to determine if there is an alternate ground supporting federal jurisdiction. *Stephenson v. Dow Chemical Co.*, 346 F.3d 19 (2d Cir. 2003).

Pending is plaintiff's motion to remand the case to state court on the ground that there is no basis for federal jurisdiction. Defendants contend that the case is removable.

It would not be removable on diversity grounds since diversity of parties is lacking. Nor would it be removable on the ground that plaintiffs have stated a federal cause of action since the Court of Appeals by a split decision disagreed with this court that federal substantive law was the predicate for Agent Orange claims. *See*

*In re "Agent Orange" Prod. Liab. Litig.*, 635 F.2d 987 (2d Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). The only other basis is the federal officer removal statute. 28 U.S.C. § 1442(a)(1).

For reasons indicated below, the motion to remand is denied. Federal jurisdiction is properly asserted under the federal officer removal statute. A prior decision of this court reached a contrary conclusion in an Agent Orange case. *See Ryan v. Dow Chemical Co.*, 781 F.Supp. 934 (E.D.N.Y. 1992). The *Ryan* decision is no longer persuasive. As the Court of Appeals for the Fifth Circuit pointed out in rejecting *Ryan's* conclusion, this court recognized its decision on the point as "close" and "uncertain." *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 392 (5th Cir. 1998). *Ryan* was "not legally capable of appellate review." *Id. Winters*, a persuasive appellate decision, on facts almost identical to those in *Ryan*, held the federal officer removal statute applicable to the defendants in the instant case. *Id.* at 401; *see also Miller v. Dow Chemical Co.*, 275 F.3d 414, 417 (5th Cir.2001) (same).

## II. Facts

The facts supporting removal of the case on the basis of the federal officer removal statute are set forth in extensive contractual and other documents. *See In re "Agent Orange" Products Liability Litigation*, Judgment and Order of Dismissal, 304 F.Supp.2d 404 (E.D.N.Y. Feb. 9, 2004) (*"Judgment in Agent Orange III"*). *Judgment in Agent Orange III* contains a description of the relevant facts. It is deemed incorporated in this memorandum and order.

## III. Law

### A. General Rule

■ The federal officer removal statute allows executive branch officials and per-

sons acting under them to remove to a federal court civil and criminal actions brought against them in a state court for their official acts. The relevant portion of Section 1442(a)(1) of Title 28 of the United States Code reads:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office. . . .

The statute has its origins in Congress's response to the New England states' opposition to the War of 1812. *Willingham v. Morgan*, 395 U.S. 402, 405, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). Its reach was extended through the years, taking its current form in the enactment of the Judicial Code of 1948. *Mesa v. California*, 489 U.S. 121, 126, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).

■ Section 1442(a)(1) is designed to prevent state courts from interfering with the implementation of federal law. It does so by allowing those whose activities on behalf of the federal government may be inhibited by state court actions to remove the cases to a presumably less biased federal forum. If one defendant may remove under section 1442, then the entire case is removed to federal court even if some defendants could not have removed the case under the statute. *See, e.g., Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 52 (2d Cir.1985) (noting that one government defendant removed the "entire case"); 3 Moore's Federal Practice ¶ 1442.2. Subject matter jurisdiction is conferred over properly removed actions.

*Niagara Mohawk Power Corp. v. Bankers Trust Co.*, 791 F.2d 242, 244 (2d Cir.1986).

In general, lawsuits may be removed from state court to federal court only if a federal district court would have had original jurisdiction over the suit—the "well pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The federal officer removal statute expands the scope of federal jurisdiction; an action may be properly removed if it satisfies three elements. *See, e.g., Mesa*, 489 U.S. at 136, 109 S.Ct. 959 ("The removal statute itself merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged.").

■ First, a defendant must demonstrate that it is a "person" within the meaning of the statute. Second, the defendant must establish that the suit is "for any act under color of [federal] office," i.e., there is a "causal connection between the charged conduct and asserted official authority." *Willingham*, 395 U.S. at 409, 89 S.Ct. 1813 (citations omitted). Causation exists if the predicate acts of the state suit were undertaken while a person was acting as or under a federal officer, and the acts were under color of the relevant federal office. *Ryan*, 781 F.Supp. at 939. Third, defendants must raise a colorable claim to a federal law defense. *Mesa*, 489 U.S. at 131–38, 109 S.Ct. 959.

■ Defendants claim to have been persons "acting under" federal officers within the meaning of section 1442(a)(1) when they manufactured and delivered to the Department of Defense for use in war the herbicides that plaintiff alleges injured him. The primary question in the instant case is whether defendants' conduct allegedly giving rise to plaintiffs' state law claims constituted acts under a federal of-

ficer within the meaning of section 1442(a)(1).

### B. Elements of Section 1442(a)(1)

#### 1. Definition of Person

"[U]nless the context indicates otherwise ... the words 'person' and 'whoever' include corporations, companies, ..., and joint stock companies, as well as individuals...." 1 U.S.C. § 1. The Supreme Court has not ruled on whether corporations can be considered persons under the federal officer removal statute. In its most recent explication of the meaning of "person," the Court held that a federal agency was not a person under the statute. *Int'l Primate Protection League v. Adm'r of Tulane Educ. Fund,* 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). Responding to the *International Primate* decision, Congress amended the statute to allow for removal by federal agencies. Federal Courts Improvement Act of 1996, Pub.L. 104–317, 110 Stat. 3847, 3850; *see also Nebraska ex. rel Dept. of Soc. Servs. v. Bentson,* 146 F.3d 676, 678 (9th Cir.1998); *Dalrymple v. Grand River Dam Auth.,* 145 F.3d 1180, 1184 n. 6 (10th Cir.1998) (deeming the amendment a legislative reversal of *International Primate* ).

■ Congress's amendment of the statute to emphasize its broad scope supports the conclusion that "person" encompasses more than mere individuals. Protection of federal government operations in today's organizational climate where so much of our economy and government outsourcing depends upon corporations requires this result. Under section 1442(a)(1) a "person" includes a corporation. *See, e.g., Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387 (5th Cir.1998); *Thompson v. Comm. Ins. Co.,* 1999 U.S. Dist. LEXIS 21725 (S.D.Ohio 1999); *Arness v. Boeing N. Am., Inc.,* 997 F.Supp. 1268, 1272 (C.D.Cal.1998); *Ruffin v. Armco*

*Steel Corp.,* 959 F.Supp. 770, 773 (S.D.Tex. 1997); *Good v. Armstrong World Indus.,* 914 F.Supp. 1125, 1127–1128 (E.D.Pa. 1996); *Fung v. Abex Corp.,* 816 F.Supp. 569, 572 (N.D.Cal.1992); *Akin v. Big Three Indus., Inc.,* 851 F.Supp. 819, 822–23 (E.D.Tex.1994); *Ryan,* 781 F.Supp. at 946–47.

#### 2. Acting Under Color of Federal Office

■ The "color of office" requirement should not be frustrated by a "narrow" construction. Courts interpret the rule broadly to achieve the protective purpose of the statute. *Willingham,* 395 U.S. at 407, 89 S.Ct. 1813. This element requires a causal nexus between the defendant's actions under federal office and plaintiff's state court claims. *Id.* at 409, 89 S.Ct. 1813; *Winters,* 149 F.3d at 398. A substantial degree of direct and detailed federal control over the defendant's work is required. *Winters,* 149 F.3d at 398; *Arness,* 997 F.Supp. at 1273.

Cases applying section 1442(a)(1) involving defense contractors support the defense's contentions in the present litigation. In *Winters,* for example, plaintiffs sued Agent Orange manufacturers under almost identical facts. *See Judgment in Agent Orange III.* Defendants sought removal. The court determined that it was sufficient that the government specified "the composition of Agent Orange so as to supply the causal nexus between the federal officer's directions and the plaintiff's claims." *Winters,* 149 F.3d at 398. Central to the court's holding was a finding identical to that in the instant case—"that the government maintained strict control over the development and subsequent production of Agent Orange." *Id.* at 399.

The Fifth Circuit approved removal based on the federal officer statute in a subsequent Agent Orange case. *Miller v.*

*Dow Chemical Co.*, 275 F.3d 414, 417 (5th Cir.2001). By contrast—unlike the case at bar—federal control was almost nonexistent in *Arness v. Boeing North American.* The plaintiffs had sued Boeing based on Boeing's disposal of a toxic substance used to "flush rocket engine hardware." 997 F.Supp. at 1273. Government specifications required Boeing to clean the engines with a toxic substance, but did not specify how Boeing was to dispose of the cleanser. The court found that a federal officer did not direct or control Boeing's disposal of the toxin, and, thus, there was no connection between the plaintiffs' claims and Boeing's actions at the direction of a federal officer. *Id.* at 1275.

*Akin v. Big Three Indus., Inc.* illustrates a properly removable case. 851 F.Supp. 819 (E.D.Tex.1994), *removal aff'd by Akin v. Ashland Chemical Co.*, 156 F.3d 1030 (10th Cir.1998). A corporate manufacturer of jet engines was involved in a toxic tort case arising out of chemical exposure at an Air Force base. The defendants produced the jet engines in accordance with government specifications. Repairing the engines involved a grinding process, which necessarily gave rise to the emission of objectionable chemicals. The court held that the "acting under" requirement is satisfied when "a government contractor builds a product pursuant to Air Force specifications and is later sued because compliance with those specifications allegedly causes personal injuries." *Id.* at 823–24. Likewise, in *Crocker v. Borden,* the claim was based on exposure to asbestos while the plaintiffs were shipyard employees. 852 F.Supp. 1322 (E.D.La.1994). Defendants utilized asbestos as insulation in marine turbines. The marine turbines were manufactured pursuant to government specifications for the Navy. The court held that this government control established the necessary "causal nexus." *Id.* at 1327. *See also, e.g., Reed v. Fina*

*Oil & Chemical Co.*, 995 F.Supp. 705 (E.D.Tex.1998) (government dictated processes through which the victim initially came into contact with chemicals allegedly causing disease; government controlled specifications of chemicals); *Pack v. AC and S, Inc.*, 838 F.Supp. 1099 (D.Md.1993) (government had extensive control over manufacture of turbines, even specifying type of asbestos cloth).

■ The "causal nexus" is also satisfied when there is evidence of intimate government involvement in the design decisions causally related to the alleged tort. As stated in *Arness,* defendants must show that the government directed the actions on which the plaintiffs based their claims. 997 F.Supp. at 1275. By contrast, in *Good v. Armstrong World Industries, Inc.,* plaintiffs sued for injuries related to asbestos exposure. 914 F.Supp. 1125 (E.D.Pa. 1996). The court found that the Navy was involved in the design and manufacture of the turbines, but that it did not specify the use of asbestos. Acting under the general direction of the Navy "is not the same as acting under the direct and detailed control of a federal officer." *Id.* at 1129. *But cf. Crocker v. Borden,* 852 F.Supp. 1322 (1994) (opposite holding under similar facts). Similarly, in *Anderson v. Avondale Indus., Inc.,* defendant's attempt at removal was defeated by an inability to prove "intimate government oversight or involvement in the design or production of [a lagging adhesive]." 1994 WL 679827, *4, 1994 U.S. Dist. LEXIS 17598, *10 (E.D.La.1994).

### 3. Colorable Claim to a Federal Law Defense

Removal "must be predicated on the allegation of a colorable federal defense." *Mesa,* 489 U.S. at 129, 109 S.Ct. 959. In deciding whether a defendant has such a

defense, courts reject a "narrow, grudging interpretation;" they do not require that the defense is likely to be successful on the merits. *Jefferson County v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) (citation omitted).

■ Support of removal may be predicated on the federal government contractor defense. *See, e.g., Judgment in Agent Orange III; Winters*, 149 F.3d at 401; *Miller*, 275 F.3d at 418; *Guillory v. Ree's Contract Serv. Inc.*, 872 F.Supp. 344, 346 (S.D.Miss.1994) (denying removal on other grounds); *Crocker*, 852 F.Supp. at 1327; *Akin*, 851 F.Supp. at 823; *AC & S, Inc.*, 838 F.Supp. at 1103; *Fung v. Abex Corp.*, 816 F.Supp. 569, 573 (N.D.Cal.1992). *But see Freiberg v. Swinerton & Walberg Prop. Servs.*, 245 F.Supp.2d 1144, 1151 n. 5 (D.Colo.2002) (questioning "whether the government contractor 'defense' asserted by Swinerton here is the type of federal interest or immunity for which § 1442(a)(1) was intended to provide an exclusively federal forum").

### IV. Application of Law to Facts

Defendants corporations are persons under Section 1442(a)(1).

The government designed, controlled, and supervised the production of Agent Orange as a product vital to the prosecution of the war in Vietnam. *See Judgment in Agent Orange III.* Formal military specifications and requirements for Agent Orange were prepared and promulgated by the government. After the testing of many different herbicides, the military concluded that a mixture of the butyl esters of 2,4–D and 2,4,5–T was most effective for military defoliation purposes. Federal officers determined through government specifications that the "formulation" for Agent Orange would be a 50/50 mix of the n-butyl esters of 2,4–D and 2,4,5–T. The government determined that "extremely high dose rates" of these undiluted herbicides were required for effective military use.

Commencing in 1961, defendants produced and delivered Agent Orange to the United States pursuant to numerous contracts entered into with the Defense General Supply Center, the Defense Fuel Supply Center, the United States Army or the United States Air Force. The contracts set forth or incorporated by reference detailed specifications for the herbicide. Those specifications were promulgated by the government. A government directive issued pursuant to Section 101 of the Defense Production Act of 1950 commandeered the United States industry's entire capacity to manufacture 2,4,5–T, ordering defendants to accelerate the delivery of Agent Orange. *See, e.g., Hercules, Inc. v. United States*, 516 U.S. 417, 419, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) ("The military prescribed the formula and detailed specifications for manufacture."). The government also strictly and precisely defined the markings that were to be placed on drums of Agent Orange supplied by defendants, prohibiting the placement of warnings.

The government was aware of the dioxin in Agent Orange. It knew more about its dangers than defendants. The herbicidal properties of 2,4–D and 2,4,5–T were explored in research conducted by the United States military during World War II. In the 1950s, scientists at the Army Chemical Corps Chemical Warfare Laboratories located at Edgewood Arsenal, Maryland learned of dioxin as a toxic by-product in the manufacture of 2,4,5–T. The President's Science Advisory Committee ("PSAC"), an organization within the White House, was briefed by the military on the Vietnam defoliation program in 1963 and recognized dioxin as an element in Agent Orange.

As the Court of Appeals for the Fifth Circuit concluded in *Winters* and *Miller*, the Agent Orange supplied to the government was not a ready-to-order, preexisting or off-the-shelf chemical mixture. The court noted in *Winters*:

Although the defendants had produced 2,4–D and 2,4,5–T for commercial use before government involvement, their commercial formulations were never composed of a mixture of 100% pure 2,4–D/ 2,4,5–T, which the government required for the most part (98% for 2,4–D and 99% for 2,4,5–T) in its contracts with the defendants. Instead, the defendants had always included a substantial percentage of inert ingredients to dilute the two active ingredients and required further dilution before commercial application. In contrast, the government's specifications for Agent Orange included use of the two active chemicals in unprecedented quantities for the specific purpose of stripping certain areas of Vietnam of their vegetation. To quickly achieve this goal, the government dictated that Agent Orange contain only the active ingredients 2,4–D and 2,4,5–T and it applied the product in Vietnam without dilution.

*Winters*, 149 F.3d at 399; *see also Miller*, 275 F.3d at 419.

This case is distinguishable from *Arness v. Boeing North American*. As already noted, in *Arness*, defendants were sued based on the effect of their method of disposal of a toxic by-product. 997 F.Supp. at 1273. The government had not specified the manner in which the toxic by-product would be disposed of. Here, the government ordered specifications that differed from defendants' commercial applications. In addition, the method of warning and application was completely in the government's hands.

The government's full knowledge of the dioxin "problem" inherent in the production of Agent Orange is evidence that the federal officials maintained control over the acts on which the litigation is based. *See Miller*, 275 F.3d at 418; *Winters*, 149 F.3d at 400. *See also, e.g., Akin v. Big Three Indus., Inc.*, 851 F.Supp. 819 (E.D.Tex.1994); *Pack v. AC and S, Inc.*, 838 F.Supp. 1099 (D.Md.1993); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D.Cal. 1992); *Judgment in Agent Orange III.*

The final element of removal under Section 1442(a)(1) is whether defendants have established a "colorable federal [law] defense." *Mesa v. California* 489 U.S. 121, 129, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). Although the Supreme Court has stated that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court," *Willingham*, 395 U.S. at 407, 89 S.Ct. 1813, the Court did not limit the scope of federal law defenses in removal cases to immunities. The government contractor defense is a colorable federal law defense in much the same way self-defense is a colorable state law defense to civil assault charges. In an assault case, the defendant may claim: "He made me do it;" here a defendant may properly assert, " 'The Government made me do it.' " *In re Joint Eastern and Southern Dist. New York Asbestos Litigation (Grispo v. Eagle–Picher Industries, Inc.)*, 897 F.2d 626, 632 (2d Cir.1990).

■ An element of the government contractor defense is that the contractor must inform the government of any dangerous consequences known to it but not to the government. This requirement is satisfied in the present case. *See Judgment Agent Orange III; see also, e.g., Winters*, 149 F.3d at 401.

The defendants have satisfied all elements for removal to federal court based

on section 1442(a)(1) of Title 28 of the United States Code. As "persons" acting under a federal officer, in the Agent Orange litigation, defendants were proxies for the government.

### V.  Policy Considerations Supporting Removal

The military contractor defense is based upon substantive policy considerations as well as pragmatic procedural factors in controlling litigation. The government contractor defense, provides substantive protection for the armed forces and its suppliers. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Section 1442(a)(1) provides procedural protection. Failure to apply the federal officer removal statute would allow into the back door of state litigation what the government contractor defense barred at the front door.

If cases such as those in this present wave of Agent Orange claims were scattered throughout state courts, manufacturers would have to seriously consider whether they would serve as procurement agents to the federal government. Since the advent of the Agent Orange litigation in 1979, mass tort law has become more hazardous for defendants. While on balance state tort law does more good than harm, its vagaries and hazards would provide a significant deterrent to necessary military procurement.

Because government contractor cases are freighted with factual findings, *Boyle,* while laying down a substantive rule, may be readily circumvented by state courts unsympathetic to the defendants. Central to "Congress' concern [was] local hostility to federal authority." *Mesa,* 489 U.S. at 140, 109 S.Ct. 959 (Brennan, J., concurring). "Congress has decided that federal officers, and indeed, the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham,* 395 U.S. at 407, 89 S.Ct. 1813. While there are theoretical protections in the Supreme Court's power to directly review a state court's decision prejudicial to the federal government and its contractors, very few cases can be reviewed by this route. *Cf.* Kermit Roosevelt III, *Light from Dead Stars: The Procedural Adequate and Independent State Ground Reconsidered,* 103 Colum. L.Rev. 1888, 1918 (2003) (noting that in habeas corpus cases that "the task of error-correction, once the province of the Supreme Court on direct review, has been farmed out to the district courts").

### VI.  Conclusion

Plaintiffs' motion to remand is denied. No costs or disbursements.

SO ORDERED.